# Finch *vs.* Finch.

The husband and wife were divorced, by a decree of the superior court, upon her application, and the custody and control of their minor children were awarded to her. In an action of book debt, brought against the father, for the entire support and education of such children, furnished by her after such decree had been granted, it was held, that she could not recover. (Two judges dissenting.)

The case of *Stanton* v. *Wilson*, 3 Day R., 37, commented on.

This was an action of book debt, brought against the defendant, by his former wife, after they had been divorced, to recover for the education and support furnished by her to their minor children.

At the superior court, for Fairfield county, holden in October, 1851, an auditor was appointed, to adjust the accounts between the parties, who, after a hearing before him, found and reported, that the defendant was indebted, and owed to the plaintiff $126.96.

On a remonstrance to the acceptance of this report, the following facts appeared, and were found by the court.

That on the trial before the auditor, on the plea of the general issue, the plaintiff presented the following account :

" Curtis Finch,

To Catharine S. Finch, Dr.,

For board of seven children, viz.: Catharine A., Sarah V., Ellen L., Clarence V., Mary Alice, Francis O. and William Henry Finch; from December 9th, 1850, to January 29th, 1851, eleven and a half weeks, at $8.00 - - $92.00

| | |
|---|---|
| For books and clothes for Clarence, - - | 5.00 |
| Two pairs of shoes, and clothing Ellen, - | 4.00 |
| Clothing for three youngest children, - - | 10.00 |
| Medical attendance, - - - | 3.00 |
| School books, - - - - - | 2.00 |
| | $116.00 |

Heretofore, and until the first Tuesday of October, 1850, the plaintiff was the wife of the defendant, and the children,

named in said account, were the lawfully begotten children of the plaintiff and defendant. On the 12th of January, 1850, the plaintiff brought her bill to the superior court, for the county of Fairfield, praying for a divorce from the defendant,—for alimony from his estate,—and for the custody, control and education of said children, with such provision for their support and education as should be just and legal. At the October term, 1850, said court passed a decree, granting a divorce; and also found, that the defendant was unfit for the custody and education of said children, and granted said custody and education to the plaintiff; and also assigned to the plaintiff, out of the defendant's estate, the sum of twelve hundred and twenty-two dollars, as her alimony,—which sum was fully paid.

On the trial before the auditor, the plaintiff claimed, that the defendant was liable to her, for said items of account; it being admitted, that she had furnished the same, solely on the ground of his obligation to support and educate his lawful children. The defendant resisted said claim, and claimed that, by said decree, he was discharged from such support and education, and could not be liable to her therefor. Upon these facts, the case was reserved for the advice of this court, as to what judgment should be rendered therein.

*Hawley* and *Carter*, for the plaintiff, contended, 1. That the decree of the court, divorcing the plaintiff, and assigning the custody of the children to her, did not absolve the defendant from his liability to maintain his children. On this point, the report of the auditor is sustained by the case of *Stanton* v. *Wilson*, 3 Day 37. That case was decided upon principle, and with great deliberation, and is in conformity with the principles of the common law.

2. That the defendant should not be permitted to take advantage of his own misconduct to both mother and children, to avoid his liability, as a parent.

3. That this case is not distinguishable from that of *Stan-*

Finch *v.* Finch.

*ton & Wilson*, on the ground that an allowance was made, in the decree, for the maintenance of the children ; for, although the petition contained a prayer for such an allowance, none such was made, nor does the decree purport to make any, nor is any authorized by law.

*Ferry*, for the defendant, contended, 1. That this case differs materially from *Stanton* v. *Wilson*, upon which the plaintiff relies. The prayer of the present plaintiff, in the application for a divorce, is unlike Mrs. Bird's application to the general assembly. 1. The general assembly merely constituted Mrs. Bird " sole guardian of her son and daughter." The superior court decreed, that the plaintiff have, henceforth, " the custody, care and education of said children." The general assembly resolved, " that John Bird should pay to said Eunice, $3,000, as her part and portion of the estate of said John, and in lieu of all claims of dower." The superior court decreed, that the sum of $1,222, be assigned to the present plaintiff, as such alimony and allowance. 2. The opinion of the court in *Stanton* v. *Wilson*, proceeds upon the ground, that though, " by the divorce, the relation of husband and wife was destroyed," yet it was not so, with the relation between Bird and his children. The decree of the superior court has destroyed every legal incident to the latter relation, in the present case, unless it be the liability of the father for the support of his children, which is removed when those other incidents are destroyed. The parental duties are maintenance, protection and education ; and the parental rights are, obedience, subjection, and a title to the earnings of the minor child ; and these rights and duties are reciprocal. Sw. Dig., 42. *Morse* v. *Welton*, 6 Conn. R., 547. If the wife becomes discovert, by the death of the husband, she remains the head of the family, and is bound to support the minor children. *Dedham* v. *Natick*, 16 Mass. R., 135. *Nightingale* v. *Withington*, 15 Mass. R., 272. *Cummings* v. *Cummings*, 8 Watts, 366.

2. That the natural duty of supporting legitimate children, in their infancy, rests equally upon both parents.

3. That, upon the termination of the coverture, by divorce, this legal liability, as between the divorced parties, adheres to the one to whom the reciprocal rights of obedience and subjection appertain, so long as that one has means to apply. As between the divorced parties, and the public, either parent is liable for the support of the children, upon the incapacity of the one upon whom the primary liability rests, and the manner of enforcing the rights of the public is pointed out, in the statute. Stat. 1849, p. 540. And the parent, upon whom the liability primarily rests, if unable to support the children, either wholly or in part, may oblige the other parent to contribute, by means of the same statute, and in no other way.

4. That, where the mother, upon her application to the superior court, has obtained a divorce with alimony, and the care, custody and education of the children; if she, after such decree, and compliance therewith on the part of the husband, furnish support for the !children, without making any demand of the father, she can not recover of him therefor, in any form of action. *Shelton* v. *Pendleton*, 18 Conn. R., 417. Hardship is thereby imposed upon no one. If the wife is utterly unable to support the children, she can, by her application to the county court, throw the burden upon the husband. If she be partly able, she can, in the same manner, force him to contribute.

CHURCH, C. J. In the discussion of this case, we may allude to principles not necessarily involved in its decision; but we wish to determine definitely no other question than the one presented by the record before us; and this is, whether the mother of these children can sustain this action at law, against her divorced husband, to recover the entire expense of their support, furnished by her, upon the claim, that he alone is liable for it, under the peculiar circumstances of this case.

The question is not, what are the reciprocal rights and duties of these parents and children, as respects each other; but, what are the duties of these parents as between themselves?

We know of no principle of the common law, nor of natural equity, upon which the position, relied upon by the plaintiff, can be sustained. The case discloses nothing, from which we can infer, or presume, that the mother is not of equal pecuniary ability with the father, to maintain their common offspring, nor whether the father has adequate ability to do it. There is a law of our universal humanity, as extensive as our race, which impels parents, whether fathers or mothers, to protect and support their helpless children. It is a duty common to both, and the consequent obligation is common. Blackstone very properly says, that " the duty of parents to provide for the maintenance of their children, is a principle of *natural law*. By begetting them, therefore, they have entered into a voluntary obligation to endeavor, as far as in them lies, that the life which they have bestowed, shall be supported and preserved. And thus the children will have a perfect right of receiving maintenance from *their parents*." This duty, and this obligation, have been variously modified, by the positive laws of civilized countries, but fully recognized by all.

Connected with this obligation of maintenance, there is a parental privilege. The parent is entitled to the custody and care of the child, which he sustains, and ·to such service as it can render; and he has a right to exercise his own discretion, in determining the fitness and necessity of the allowances ·to be made, and of the support to be furnished to his children, for which he is to be made chargeable. 1 Bl. Com., 453. 2 Kent Com., 192. Reeve Dom. Rel., 290, note. *Bainbridge* v. *Pickering*, 2 W. Bl., 1325. *Seaborne* v. *Maddy*, 38 E. C. L., 194.

The parental legal obligation to support children, by the

law of England, is enforced by statute provisions.  The Stat.
43 Eliz., Ch. 2, directs, that " the father and mother, grand-
father and grandmother, of poor, impotent persons, shall
maintain them, if of sufficient ability, according as the quar-
ter session shall direct."  1 Bl. Com., 448.

A statute of our state is nearly a transcript of the Eng-
lish statute on this subject, and enacts, that poor persons
shall be taken care of and supported by such relations as
stand in the line of father and mother, grandfather and grand-
mother, children and grandchildren, if they are of sufficient
ability, which is to be done by order of the county court.
Neither in England, nor in this state, are there any other
statute provisions, enforcing the parental duty of support,
that we are aware of ; and these extend to the mother, as
well as the father, upon the principle to which we have be-
fore alluded, that this duty is common and equal to both ;
and they embrace as well minor as adult children.   2 Kent
Com., 192.

The *legal* liability of the parent necessarily depends upon
his, or her, ability to furnish the maintenance.   2 Kent
Com., 192.  *Billingsly* v. *Critchett*, 1 Bro. Rep., 268.  *Cooper*
v. *Martin*, 4 East, 76.   Reeve Dom. Rel., 283.   So long as
the parents are both living, and continue in a state of cover-
ture or marriage, the civil or legal liability of the mother to
furnish pecuniary aid or maintenance to her children, is sus-
pended or postponed ; because, as is said by Kent, in his
commentaries, vol. 2, p. 192, " When the wife, by her mar-
riage, parts with her ability to maintain her children, she
ceases to be liable.  By her marriage, and while it con-
tinues, she has most effectually parted with her ability, and
has transferred it, in many instances, to her husband.   Her
civil existence even, for many purposes, and for this espe-
cially, is merged in that of her husband.   Her personal prop-
erty has become his, and the use of all her real estate with
it, so, as between themselves, as well as others, it is equita-
ble and just, that the whole burden of maintaining their chil-

dren should be thrown upon him. But, even in such a case, a court of chancery, if the wife had a competent separate estate, and the husband or father had none, might decree a maintenance by the mother. 2 Kent Com., 192.

We know of no regulation, in England or in this country, except the inability occasioned by coverture, or the want of pecuniary means, by which the equal natural obligation of the mother to maintain her minor children, who are too helpless to maintain themselves, is excused. By the civil law, this common duty of the parents was enforced. Taylor's Elements of the Civil Law, p. 383. 2 Kent Com., 188.

We advert, now, to the facts of this case. By the decree of divorce, the marriage between these parties was dissolved,— the connubial relation only : the parental relation between the parents and children was not thereby affected ; this remained, with all its duties and obligations, except so far as the rights of the father were taken away and transferred to the mother ; and, along with these rights, as we think, corresponding and dependent obligations. It is the father alone, who can complain now, if anybody, and demand exemption from his former obligation of providing the entire support and maintenance of the children. At least, the equal obligation of these parties, *as parents*, by the dissolution of the marriage, yet exists. We have, therefore, a case, in which one of the parties, whose duty it is to maintain these children, and to contribute equally, so far as we know, to this object, is seeking to recover the whole expense of such maintenance, from the other. A statement of the claim, it would seem, would be sufficient to refute it. As a wife, this plaintiff was not legally bound to maintain these children ; as a parent, she is, equally with the father. This is the position we assume.

Although this is an action on book, it is equivalent to, and concurrent with the common law action of *assumpsit*, for the same cause of action, and requires a contract or promise,

express or implied, for its support. The facts of the case repel all implication of promise, or undertaking. The children have, by the action of the plaintiff, been taken from the defendant, without his consent ; she has sought for, and obtained, the custody of them, and their services, in opposition to the will of their father, and has thus deprived him, not only of the present and prospective services of his children, but of all control over them, and of the right and power of advising and directing, in regard to the amount and fitness of the support which he is called upon to pay for.

We have seen how far the statute laws of the state interfere, to enforce the natural duty of protection and support, and that they do not reach such a case as this. We enquire now, does the common law ? Mr. Chitty, in his Notes to Blackstone's Commentaries, vol. 1, p. 488, says : "Though, independently of an express contract, or one implied from particular facts, a father can not be sued, for the price of necessaries, provided for his infant son, yet very slight circumstances will suffice to justify a jury, in finding a contract, on his part." This position is believed to be supported by the entire current of English authorities, and, if any case, in this state or country, has seemed to oppose it, we think it has been, because the general duty and obligation of the parent to maintain the child, has been considered as equivalent to an undertaking and promise, by a neglectful parent, to any third person, who has voluntarily assumed it ; whereas such duty or moral obligation, should be viewed only as furnishing a good consideration for a promise. *Cook* v. *Bradley*, 7 Con. 57. *Mortimore* v. *Wright, 6 Meeson & Welsby*, 482. Cited in 8 Law Reporter, 222 ; in which case, Lord Abinger, C. B, said : "In point of law, a father, who gives no authority and enters into no contract, is not liable for goods supplied to his son, while under age, any more than an uncle, a brother, or a stranger would be. The mere moral obligation upon a father, to maintain his child, (which

I by no means deny,) affords no inference of a promise to do so." In the same case, Baron Parke, says: " It is a clear principle, that a father is under no legal obligation to pay his son's debts, unless he has contracted so to do, except perhaps under the 43 Eliz., under which, under certain circumstances, he may be compelled to support his children, according to his ability. A mere moral obligation can impose upon him no such legal liability."

In the case of *Seaborne* v. *Maddy*, 38 E. C. L., 194, it is decided, that, " No one is bound to pay another, for maintaining his children, unless he has entered into some contract so to do. Every man is to maintain his own children, as he himself shall think proper ; and it requires a contract, to enable another person to do so, and charge him for it, in an action." The following cases may be referred to, in support of the same general principle. *Baker* v. *Keen*, 3 E. C. L., 449. *Huck* v. *Tollemache*, 11 *ib.*, 296. *Rolfe* v. *Abbott*, 25 *ib.*, 400. *Law* v. *Welkin*, 33 *ib.*, 193. *Blackburne* v. *Mackey*, 11 *ib.*, 295. *Gordon* v. *Potter*, 17 Vermont R., 350. 3 Stephens, N. P., 2052. *Nichelson* v. *Spencer*, 11 Ga. R., 607. Whether there was here a promise, express or reasonably to be inferred from the facts, it would seem, at least, should have been submitted to, and considered by, the auditor. A divorced wife, who has taken the children from their father, stands in no more favorable position to recover, than a stranger, as we conceive. We do not concede, that the parental obligation of maintenance arises solely from the consideration of natural affection ; but, somewhat, also, from the corresponding duty of obedience and service, due from the child to the parent. When the child is absolved from these filial obligations, without the parent's consent, and does not perform them, how can it be said, that the obligation of the parent to maintain him still remains perfect ? If the selectmen, under the provisions of our law, should take a child from its parent and bind him an apprentice to another, thus transferring his duties away from the parent,

could it be claimed, that the parent was still liable for support, or for necessaries furnished by a stranger, or by the master ?

The strongly urged argument, by the plaintiff, that the misconduct of the father and his unfitness to exercise parental control, throw a liability upon him to support his children, while in the custody and service of their mother, without his consent, has had weight with us ; and yet we do not see how we can yield to it, consistently with the views we have expressed. This does not, in our opinion, discharge the mother from her duties, as parent ; and the father is not, in this way, to be punished, and be made to assume an entire and sole responsibility, which morally and legally attaches to both parents equally.

The claim is, that the same principle governs here, as creates the liability of a husband to support a wife, who, by reason of his misconduct, has sought a refuge elsewhere. We think the distinction is obvious. The husband is solely liable to support his wife, chiefly by reason of the union and identity of husband and wife, and of his absolute and controlling rights in her estate. Her separate legal existence is merged in his, during the coverture, for this purpose ; and the liability is as perfect, if he be poor, as if he be rich.

In the only case that we know of, in which such a claim as this has ever been sustained, *Stanton* v. *Wilson*, 3 Day, 37, reliance was essentially placed upon the fact, that the mother had, by the decree of divorce, been constituted guardian of the minor children, and *so bound to support them*. If, in this case, the mother can be considered as guardian, which is not certain, how does it follow, that she is bound to support the children, unless because she has voluntarily assumed to do so, by taking them from their father, without his consent ? A guardian has power over the person and estate of his ward ; but no power, that we know of, to charge the person or estate of anybody else, for supporting him ; and we can not but think, that the assumption of the court,

in that case, that, because the mother was appointed guardian, *therefore* she was bound to support the children, and from the husband's estate, was a *non sequitur*.   If a guardian has custody and control, both of the person and the property of the child, his duty is, to appropriate the property for its support.   Is there any legal obligation upon a mere guardian of the person, to support a ward without property?

It seems to a majority of the court, that the sole obligation of supporting the children, which was thrown upon the husband and father, by the state of coverture, is essentially changed, or modified, by the dissolution of the marriage. And now, their pecuniary condition and ability may be equal, or otherwise.   The mother may have ample means, and the father none, and in such case, surely, it would be inequitable, to charge the father with the entire maintenance of the children, while they remain in their mother's service, and under her exclusive control; and we do not believe the common law imposes any such obligation.

Of course, a majority of the court will advise, that judgment be rendered in favor of the defendant.

In this opinion, WAITE and HINMAN, J's, concurred.

ELLSWORTH, J.   I see no occasion for reversing the decision of *Stanton* v. *Wilson*, so well considered by a court of distinguished and unsurpassed ability, and which, so far as my knowledge extends, has ever been satisfactory to the judges and the profession: and for myself, I must say, it appears to be sustained, by principles entirely satisfactory, and as old as the common law itself.

The divorce of parents, has not, of itself, in a legal point of view, any effect whatever upon the subsequent character and position of the children; such is not the purpose contemplated, nor the appropriate consequence following.   The father's duties and rights remain, as before, except so far as the divorce, of necessity, or by implication, prescribe a

restricted or limited qualification. But the divorce pre-
scribes none. No matter which parent sues for the divorce,
nor which, as against the other, is entitled to obtain it; there
certainly appears to be no reason, why its consequences
should reach beyond themselves, to their issue. The father
was alone liable for the necessaries of his children, before
the divorce, and why not equally so, after?

It is true, that by statutory provision of this state, if the
wife, at the time of the divorce, or at any subsequent time,
can satisfy the court, that the father is an unfit person to
have the care of the children, so that by reason thereof, their
safety and well-being are endangered, then, *on their acccount*,
the court may proceed to make an order, that the mother
shall have the care and custody of the children. But this
is no part of the divorce, nor any necessary effect of it, nor
has it any certain duration, and the father may procure the
order to be suspended or modified, or reversed, as soon as he
becomes virtuous, and can satisfy the court, that he will dis-
charge the duties of a father. Until then, the court may
well appoint the mother, or some other meet person, to be
guardian of the children, for the purposes already mentioned;
and when appointed, she is no other than a statute guardian
for those purposes. But, we ask, is this to be done at her
expense? Is the father, by reason of his abuse of his wife,
to be released from the obligation of supporting his children?
Besides, it should be considered, that the alimony given to
the divorced wife, is given for her support, and not theirs;
and no court, in fixing the proper sum for alimony, has a
right to take into the account, the children of the marriage,
respecting whom there may, by possibility, be an order of
the court, founded upon their necessities.

The necessity of an order, of itself, implies, that the fa-
ther's relations to the children are unchanged and untouched,
by the decree of divorce, for, why else procure an order for
their care, custody and education? The order is necessary,
if the mother has a common law right to them, or can be

compelled to support them, as one of the parents? Suppose the children become sick, or lame, or destitute, are they not to be provided for, as before? and if they are, by whom, I ask, is it to be done? By the father, certainly. Such is the common law, everywhere, so far as my knowledge extends, and it is quite unimportant for this purpose, whether we consider the children as continuing to live with their father, or as driven out from his family, by his brutal conduct, (as is indeed virtually the fact, in this case,) or by reason of his intemperance, or other wickedness, it has become necessary for the court to interfere, for their comfort and safety. What are the children of divorced parents to do, and what is to be done with them? Whose children are they? On which parent are they to call, for assistance? Surely, these are important questions, both to the children themselves, and the public at large: and it is not possible, that a decree of divorce makes the parents equal proprietors of their children, or equal in authority, or control. If so, how would it be, if the divorce is granted for the misconduct of the wife? Does the husband, in that case, lose his children likewise? and yet it is so, if a divorce, of itself, makes the parents independent and equal proprietors of their offspring. I can not believe that any father, be his conduct toward his wife what it may, or his wife's toward him, whether they live together or not, or are divorced or not, can successfully claim, that, at the common law, the mother is bound, either jointly or severally, to support the children; nor can I perceive, that the temporary order of the court presents this question in a different point of view. The order is not the material thing; it neither creates nor destroys the duty of the father, and I do not understand, that the majority of the court make the case to turn on the fact of an order; but, unless I misapprehend, on the broad principle, that, after the divorce, each parent is bound equally to discharge this common law duty, and I should argue, of course, are to be equal in their other relations of rights and duties, to their children. It is, I sup-

pose, on this ground, that they hold, that the performance of this joint duty by the mother, will not give her a right of action at law, against the father, but each one's proportion must be settled, from time to time, in a court of equity, according to the existing circumstances and ability of the respective parties. This distinction appears to me to be entirely novel and unnecessary, although it is of the first importance, in this portion of the domestic relations; and if I mistake not, the adoption of it, as a rule of law, will require our courts to assume the character of perpetual guardianship over all minor children, whose parents are divorced. I see nothing in the nature of this case, which justifies any such principle of law; and certainly there is no adjudged case or elementary writer in support of it. It is equally singular and novel, that, out of a divorce there should spring an equality of parental authority and legal obligation. On the other hand, I must think, that the father remains the father still, the only parent known at the common law, to be liable to support and take care of the children; alone entitled to their services, their possession, their control and their obedience, except just so far as the order of the court works a change or modification; which I have shown it does not, as to their necessary support. This I take to be the law, fully maintained, in 1 Bl. Com., 478; 2 Kent; 161; Reeve's Dom. R., 295, 320, 324; 2 Mass. R., 418, and numerous other books, where the common law rights and duties of the father toward his children, as universally understood and acted upon, are stated and illustrated, while no such rights and duties are anywhere mentioned, as appertaining to the mother.

If this old-fashioned rule of law is not just and satisfactory to judges, or, if it is not as applicable to society now as it was before the marital rights of husband and wife were affected by modern statutes, in relation to her property, then, I say, let an application be made to the legislature, to grant the necessary modification and relief, but not to the judges

who, in order to meet the exigency of this class of cases, are in danger of subverting the fundamental principles applicable to the relation of parent and child.

In this opinion, STORRS, J., concurred.

Judgment for defendant.