ZILLEY, Respondent, vs. DUNWIDDIE, Guardian *ad litem*, Appellant.

*January 17 — February 8, 1898.*

*Parent and child: Liability of father for support of child furnished by mother after divorce: Implied promise.*

A decree of divorce, granted for cruel and inhuman treatment of the wife by the husband, awarded the care and custody of the children to the wife until the youngest became ten years of age, but made no provision for their support. When the youngest child reached that age the father applied to the mother to have the child come to live with him, but the mother refused to let him go, and the father thereupon told her that he would not pay for his keeping. Thereafter the father made frequent efforts to get the child to live with him, but the mother would not consent, and the child continued to reside with his mother until a short time before the death of his father, at which time the latter sent him away to school, where he remained until after his father's death. *Held,* that a promise on the part of the father to compensate the mother for her necessary expenses in maintaining the child after the father became entitled to his care and custody, would be implied from his acquiescence in such maintenance by her and his failure to compel the child to live with him. MARSHALL, J., dissents.

APPEAL from a judgment of the circuit court for Rock county: JOHN R. BENNETT, Circuit Judge. , *Affirmed.*

This is an appeal from the judgment of the circuit court for Rock county allowing the claim of *Mary A. Zilley,* the respondent, against the estate of her former husband, August Zilley, deceased.

The parties were married September 26, 1867, and divorced, by a decree of the circuit court for Rock county, December 29, 1884, in an action brought by the claimant against said August Zilley, on the ground of his cruel and inhuman treatment. The court by its decree made a final division of the estate of said August Zilley between him and the said *Mary A. Zilley.* The parties had an understanding with each

·other previous to the divorce in regard to the custody and
·education of the two children of the marriage, namely, Will-
iam A. Zilley, at that time about sixteen years of age, and
*Clayton A. Zilley,* about five years of age, to the effect that
the mother, the present claimant, should have the custody
and education of the boy William A. Zilley, and also of the
youngest child, *Clayton A. Zilley,* until he should become of
the age of ten years, after which his father was to have him.
The court accordingly decreed the custody of said children
to the mother "until the youngest of said children should
become of the age of ten years, or until the further order
·of the court," the defendant in the meantime having the
right to visit such children at reasonable times, in the day-
·time.   No provision whatever was made in the decree as to
the maintenance and support of either of the children.

About two or three years subsequent to the divorce the
deceased was married to Martha Zilley, who survives him.
The deceased, August Zilley, then resided in the city of Be-
loit, where he continued to reside after the divorce and for
·some two or three years after his second marriage.   He
then moved onto his farm, near said city, and continued to
reside there until the time of his death, March 7, 1895.   The
youngest child became ten years of age July 9, 1889, when
the deceased, August Zilley, applied to the claimant for the
boy to go and live with him, and she refused to allow him
to go; whereupon he told her that if the child could not
come and stay with him he would not pay for his keeping,
that he was willing to pay his schooling, and give him a
home with him, which was where he belonged, as he under-
stood it.   A room was fixed up for him in the home where
Mr. Zilley then resided, and subsequently Zilley tried fre-
quently to get the boy to live with him, but claimant would
not consent.   He continued to make his home with the claim-
ant down to the 13th of January, 1895, when his father sent
him to Faribault, Minnesota, to school, where he remained
until after the death of the latter.

It was found by the circuit court, among other things, that no allowance for or provision respecting the expense of the education and support of said children was made by the judgment, and no application to the court in respect thereto or in respect to the custody of said children was made by either party after judgment. The youngest child, *Clayton A. Zilley*, became ten years old July 9, 1889, and had at all times since the divorce resided with his mother, the claimant, excepting short periods of time, since he attained the age of ten years, not exceeding in the aggregate six months. He was attending school at Faribault, Minnesota, the greater portion of the time when not so residing with his mother, and during the residue of such time he was with his father, August Zilley, and his second wife, upon said farm. He visited and resided with his father for a few days at a time on several occasions after he became ten years of age, but preferred to reside with his mother, and returned to her on each such occasion, and made his permanent residence with her of choice, because his father was unwilling to compel, or did not compel, him to reside with him. Between July 9, 1889, and March 7, 1895, the date of the death of August Zilley, the claimant furnished said *Clayton A. Zilley* his board and lodging, and cared for him for and during five years and two months at her sole cost and expense, which board, lodging, and care were reasonably worth $1,072; and after said 9th day of July, 1889, and prior to March 7, 1895, said claimant furnished to said *Clayton A. Zilley* necessary clothing, at the cost to her of $146.50; and nothing had been paid to or received by her from any one for or on account of such board, lodging, and care, or for such clothing. The claimant filed a claim against the estate of said August Zilley, deceased, in the county court of Rock county, for such board, lodging, care, and clothing, for the sum of $1,444, and the county court, by its judgment, wholly disallowed said claim, and the claimant appealed therefrom to the circuit court.

The foregoing facts were found by the circuit court, and that the executor of the last will and testament, George H. Crosby, had in his hands assets, properly applicable thereto, more than sufficient to pay the said claim.    There was evidence that the deceased, August Zilley, desired the boy *Clayton* to live with him, and on one occasion sent Yor the boy, and the claimant said that he did not have to go if he did not want to.    In answer to the question why she kept the boy, she testified that the boy stayed there, and "I felt under obligations to have him stay."    It appeared that the father was able and willing to properly provide for the boy, and desired that he should live with him.    The circuit court reversed the judgment of the county court, and allowed said claim at the sum of $1,218.50, and adjudged that it be paid to the said claimant by said executor, with the costs of the action.

The guardian *ad litem* of the two minor children of the said deceased, to wit, said *Clayton A. Zilley* and *Edna Zilley*, a daughter by his second wife, appealed.

*B. F. Dunwiddie*, guardian *ad litem*, contended, *inter alia*, that a divorced wife and mother cannot recover from the estate of her husband, on the settlement thereof in the county court, for support and maintenance furnished voluntarily by her to her own child, where, under the decree of divorce, the father is entitled to the custody of the child, and has been at all times desirous, ready, and able to give the child a home and provide for its support, but is prevented therefrom by the influence and refusal of the mother.  *Ramsey v. Ramsey*, 121 Ind. 215; *Rich v. Rich*, 88 Hun, 566; *Burritt v. Burritt*, 29 Barb. 124; *Cushman v. Hassler*, 82 Iowa, 295; *Hampton v. Allee*, 56 Kan. 461; *Harris v. Harris*, 5 id. 46; *Hall v. Green*, 87 Me. 122; *Brown v. Smith*, 19 R. I. 319; *Chester v. Chester*, 17 Mo. App. 657; *Gotts v. Clark*, 78 Ill. 229; *Finch v. Finch*, 22 Conn. 412; *Chandler v. Dye*, 37 Kan. 765; *Fulton v. Fulton*, 52 Ohio St. 229.    The power

given the circuit court by sec. 2363, R. S. 1878, to modify the judgment in the divorce action deprives other courts of any jurisdiction over the care, custody, maintenance, or education of the children. Under the divorce decree they became the wards of the circuit court, and all applications affecting their custody or maintenance must be made to that court in the divorce action. The claimant could not have maintained an action in any court against Mr. Zilley for the support and maintenance of the boy, *Clayton*, intermediate the decree and the death of Mr. Zilley. She was limited to her application under the section cited. *Ramsey v. Ramsey*, 121 Ind. 215; *Hoffman v. Hoffman*, 15 Ohio St. 427; *Williams v. Williams*, 13 Ind. 523; *McNees v. McNees*, 97 Ky. 153; *Brow v. Brightman*, 136 Mass. 187; *Stetson v. Stetson*, 80 Me. 483; *Sullivan v. Learned*, 49 Ind. 252; *Shaw v. McHenry*, 52 Iowa, 182; *Leming v. Sale*, 128 Ind. 317; *Jennings v. Jennings*, 56 Iowa, 288; *Bennett v. Southard*, 35 Cal. 688.

For the respondent there was a brief by *Ruger, Norcross & Ruger*, and oral argument by *William Ruger*.

PINNEY, J. At the common law the husband was primarily liable for the support of his minor children. 2 Kent, Comm. 190. In *McGoon v. Irvin*, 1 Pin. 532, it was said that " by every principle of law upon the subject, recognized and strengthened by our statute, parents are under legal obligation to maintain and support their children who are of tender years and helpless." The statute (R. S. 1878, sec. 1503) makes the father primarily liable to support his minor children. When the marriage is dissolved by divorce, the duty of parents to maintain their children remains as before, for children are not parties to the divorce suit and do not lose any rights thereby. Hence the father's duty to maintain them after the divorce, where there is no decree of the court relating thereto, especially if their custody is not

taken from him, remains as before. After the parents were divorced all duties and obligations to each other ceased, and they became as strangers to each other. Nelson, Div. & Sep. § 981. The claimant owed the husband no duty as wife, and her duty to support the child continued, as before, secondary, and his primary. 2 Bishop, Mar., Div. & Sep. § 1210; *Plaster v. Plaster*, 47 Ill. 292. It is generally laid down that the liability of the husband to a divorced wife, in respect to the support of the children, is the same as to any other third person, except as provided in the decree. If the court makes no order either for custody or support of children of the marriage, the divorce leaves the father's liability as at common law, and the mere divorce does not terminate his liability. 2 Bishop, Mar., Div. & Sep. § 1220; *Thomas v. Thomas*, 41 Wis. 233. In a proper case, it seems, after the marriage is dissolved, he may be answerable to the mother for maintenance rendered the children while living with her. *Stanton v. Willson*, 3 Day, 37; *Buckminster v. Buckminster*, 38 Vt. 248. The father is under legal obligation to provide for the support of his children, even if they remain with their mother after her divorce, and, as against the public and the children, he cannot escape the duty. *Courtright v. Courtright*, 40 Mich. 633. Where the decree has granted the custody of the children to the wife and contains no provision for their support, it has been held that the father is not liable for the support of the children. But this is upon the ground that, the statute having made it the duty of the court to provide for their custody and maintenance upon divorce, it will be presumed that the decree has made all the provisions on that subject that were necessary; that the decree is conclusive as to the respective rights and obligations of the parties, subject to the right to have it modified as subsequent exigencies may require. As the decree makes the parties strangers as to each other, it is generally considered that a divorced husband is not liable

Zilley vs. Dunwiddie.

to his divorced wife for necessaries furnished a child of the marriage in her custody unless by agreement, express or implied; that there must be either an express promise, or facts from which one can reasonably be inferred. *Ramsey v. Ramsey*, 121 Ind. 215; *Cushman v. Hassler*, 82 Iowa, 295. And it has been considered that the support of the child, under such circumstances, by the mother, was but the voluntary performance of a natural duty, and that her remedy was to apply to the court for maintenance of the child when the divorce was granted. These, and other cases of a similar purport, are confidently relied on as decisive against the claimant.

In *McGoon v. Irvin*, 1 Pin. 532, where the husband had procured a legislative divorce from his wife, and had left the minor children of the marriage in a family of a third person to be supported, the mother afterwards obtained the custody of the children without his knowledge and consent, and refused, on demand made in behalf of the father, to give them up. She afterwards intermarried with I., and the children were supported and educated by him. In an action by I. against the father to recover for their support, it was held that McG. had a legal right to the custody of the children, but, as he had not attempted to assert it against I., the law would presume that McG. had assented to their being in the control and custody of I.'s wife, their mother, and that I. could recover, though the act of the mother in obtaining the custody of the children before her second marriage might have been wrongful. And it was said by the court that "when a parent permits a stranger to maintain, support, and instruct such children, in no way objecting to the act, but rather assenting and advising therein, the law will presume that he knows his obligations, accepts the services, and assumes to pay." It was also said that "there was no duty or obligation on the plaintiff to notify the defendant to take the children away, or leave them to suffer until he could see

the defendant and make an *express* contract about their support and maintenance. Such a course would have merited the reprobation of every humane and upright man. The defendant had the legal right to the possession, and could have enforced it at any time. He should have first moved in the matter, and, on failure to do so, the law would presume that possession elsewhere was with his approbation and consent." In the leading case which holds the father liable, under circumstances like the present, the court approves the doctrine that, if a minor is forced out into the world by the cruelty or improper conduct of the father, necessaries may be supplied, and the value thereof may be recovered from the parent. "There is evidently no satisfactory reason," said the court, "for changing the rule of liability, when, through ill treatment or other breach of marital obligation, the husband renders it necessary for a court of justice to divorce the wife and commit to her the custody of her minor children. If, under such circumstances, upon the allowance of alimony with custody of children, the court omits to make an order for the children's maintenance, the father's natural obligation to support them is of none the less force. The duty of support is not evaded by the husband so conducting himself as to render it necessary to dissolve the bonds of matrimony and give to the mother the care and custody of the infant offspring. It is not the policy of the law to deprive children of their rights on account of the dissensions of their parents, to which they are not parties, or to enable the father to convert his own misconduct into a shield against parental liability." But, obviously, this reasoning can only apply where the husband is at fault and the decree is silent as to his liability. *Pretzinger v. Pretzinger*, 45 Ohio St. 458, approved in Bishop, Mar., Div. & Sep. § 1223, and in *Fulton v. Fulton*, 52 Ohio St. 229.

It is to be borne in mind that the divorce in the instant

case was granted to the claimant against her husband, August Zilley, on the ground of his cruel and inhuman treatment. It was his marital wrongdoing which led to the separation of the parties and the award of the custody of the boy, *Clayton*, to the mother until he became of the age of ten years. The case as to the subsequent support of the boy, *Clayton A.*, may well be placed upon the ground that the improper conduct of the father had deprived the boy of his rightful and legitimate home, and so gave the right to the mother to supply the necessary support and maintenance, and that the father should be held liable as upon an implied contract, his primary liability still remaining in full force. It is said that the father is released from obligation to maintain his infant children when deprived of their society and services against his will. In *Pretzinger v. Pretzinger, supra,* it is answered: "If voluntary misconduct on his own part leads to the deprivation, he is himself responsible, and not the court which intervenes for the protection of his children; and if the father, as against a stranger, cannot escape liability for necessaries furnished to his minor children, though remaining with their mother after the divorce, the mother will not be barred of an action against her former husband for the expense of maintaining them. After a dissolution of the marriage relation by divorce, the parties are henceforth single persons, to all intents and purposes. All marital duties and obligations to each other are at an end, and they become as strangers to each other. Upon the establishment of such new relations, a promise may be implied on the part of the father to pay the mother, as well as a third person, who has supplied the necessary wants of his infant child."

The case of *Holt v. Holt*, 42 Ark. 495, was one where there had been a decree of divorce giving the custody of infant children to the mother, and it was held that this would not relieve the father from his obligation to support them,— that he was bound to maintain them as long as they were

too young to earn their own livelihood; and a court of chancery would, at a subsequent term, entertain the petition of the mother to recover from him her reasonable and proper advances for their support *since the divorce,* and for an order for their *future* support.   The case of *Stanton v. Willson,* 3 Day, 37, already cited, was relied on,— "a decision," says ELLSWORTH, J., in *Finch v. Finch,* 22 Conn. 421, "well considered, by a court of distinguished and unsurpassed ability, and which, as far as my knowledge extends, has ever been satisfactory to the judges and the profession, and sustained by principles as old as the common law itself."

It was the right, and the duty as well, of the husband to obtain the custody and control of his infant son, and to support him, after he had arrived at the age of ten years.   We consider it against the policy of the law to encourage a father thus obligated to attempt to ignore or evade his parental duty, or to cast it upon any other party, so as to enable him to convert such parental neglect and misconduct into a shield against parental liability.   Domestic and social duty alike required him, when his son arrived at the age of ten years, to enforce his parental rights and discharge his parental duties.   He knew they were being exercised and performed by another, who as to him was then an utter stranger, and he knew, also, that the disrupted condition of his family relations had been adjudged in consequence of his marital misconduct.   We think the case of *Pretzinger v. Pretzinger,* 45 Ohio St. 458, and other similar cases, indicate the true rule, and that they are in accordance with sound principles of public policy.   We think there is ample ground from which the acquiescence and assent of the husband may be justly inferred to the provision made by the claimant for the necessary support and maintenance of his son, and which he had failed to furnish for him, so that a promise on his part to compensate the claimant for what she had so expended may be justly implied, as in the case of *McGoon v.*

Zilley vs. Dunwiddie.

*Irvin,* 1 Pin. 532. The cases bearing upon the subject are not, it must be admitted, in entire accord, but they have turned largely upon questions of public policy in the states where they have been decided.

We hold, therefore, for the reasons stated, that the recovery in favor of the claimant is correct, and should be affirmed.

*By the Court.*— The judgment of the circuit court is affirmed, with costs against the said appellant to be paid out of the estate of August Zilley, deceased.

MARSHALL, J. (dissenting). The question presented and decided in this case, stated plainly, is as follows: Where husband and wife are divorced and the custody of their minor child is left with the mother till it arrives at the age of ten years, and the legal custody then passes to the father by operation of law, if, when the latter period arrives, he does all thereafter that parental affection can suggest to induce the child to live with him, stopping short only of using force or legal authority to accomplish that result, yet the child, through stronger natural attachment for the mother, or induced by her, or from both causes combined, shall remain with the mother by her consent, and she makes no claim to compensation in advance for supporting the child or during the time of such support, and knows that the father desires to control, educate, and maintain the child in his own way, can the mother maintain an action against the father for her services in maintaining such child during the time the legal custody was in the latter?

My brethren have answered this question in the affirmative. The grounds upon which the decision is placed, I am not able to discern with certainty. Allusions are made to the moral and legal duty of a father to maintain his child, with which all concur, but obviously that mere duty is one enforceable only by the public. In an action by a private

individual such duty is only a circumstance to be considered in determining whether contractual relations, express or implied, exist between the parties. Many cases are cited by my brethren where there was an application for support of a child, made in a divorce action, granted, and sustained on appeal, on the ground of parental duty, but such is not this action. The citations do not touch the question here. Nevertheless, in substantially all of the well-considered cases cited, it is held that compensation in such instances can go only for future, not for past, support. *Thomas v. Thomas,* 41 Wis. 229; *Courtright v. Courtright,* 40 Mich. 633; *Ramsey v. Ramsey,* 121 Ind. 215. Cases are cited to the effect that a cause of action accrues to the person who furnishes support to a child where the father omits to do so, merely because of the moral and legal duty of the parent and a failure on his part to compel the child's obedience to his authority. That appears to be the theory my brethren have adopted. The precedents for that are instances where courts have seemingly lost sight of the distinction between duty to the child which the public may enforce, and duty as evidence of a contract that a private party, privy thereto, may enforce by personal action at law. Man's humanity for children and melting tenderness for their welfare, one of the most admired and admirable sides of human character, has apparently operated, at times, to swing even courts away from that safe anchorage in the law, that personal obligations, enforceable by personal actions *inter partes,* rest solely on contract. That principle, rigidly adhered to, is the best protection of us all. Any departure from it for any cause is fraught with danger.

I am warranted in believing that the decision here, as stated, is based on the natural and legal obligation to support the child, not on contract, because the most prominent authorities cited and quoted from by my brethren in support of the decision are instances, in my judgment, that

come within the observation made at the close of the last paragraph, as evidenced by the subsequent history of the question under discussion in the courts where such decisions were rendered. The first is *Pretzinger v. Pretzinger*, 45 Ohio St. 459. There the divorce was granted on application of the wife for fault of the husband. The custody of the child was awarded to the mother without provision for its support. Subsequently the divorced wife brought suit against the father to recover for the support of the child, and her action was sustained solely upon the ground that the obligation of the father was primary, continuous, and absolute, and not affected by divorce. The same reasoning was indulged in as that leading up to the decision here. It was decided in 1887. In 1895, in *Fulton v. Fulton*, 52 Ohio St. 229, the same question was again presented, except the divorce was granted for fault of the wife. It was held that there could be no recovery in the absence of an obligation growing out *of a contract, express or implied*. The court said, in effect, that while the relations of the parties to the child were not changed, their relations and obligations to each other were the same as that of strangers, and that no recovery could be had without showing a request from the father to support the child, or a promise to pay for such support; that the circumstance of the child's staying with its mother was so explained by the natural relations existing between them as not to leave any room for implication that there was a contract relation between the father and the mother in respect to the support of the child. True, the court instead of directly overruling *Pretzinger v. Pretzinger, supra,* distinguished the two cases by saying that the divorce in the former was for fault of the husband, in the latter for fault of the wife; but that was manifestly an explanation that entirely failed to explain. The right to recover, so far as it could be sustained on moral and legal duty, did not change in any respect by the circumstance that the divorce was

granted for the fault of the wife. In both cases the divorced husband and wife were strangers to each other. The learned and very able court would have made a more orderly retreat from its early position by saying that it was based upon a wrong principle, for the two cases are manifestly inconsistent, and the result of trying to harmonize them presents the appearance ordinarily observed where the effort is made to preserve consistency by trying to harmonize things that are diametrically opposed to each other.

Again, in *Stanton v. Willson*, 3 Day (Conn.), 37, decided in 1808, that court held that the divorced wife could recover of her former husband for the support of the child because of the fact that prior to the divorce he abandoned it and his con- duct compelled the court to place its custody with the mother as its guardian; that by reason of the facts she could contract debts for the support of the child after the divorce, while she had the legal custody of it without any provision for its support, without consent of the father, upon the principle that when a person forces his wife from his home he is liable to the stranger to whom she is thus compelled to resort for necessaries. The case has very little bearing on this one. Here the custody of the child was in the father; his residence with the mother was not by order of the court, or because abandoned or compelled to leave the paternal roof, but because he preferred the society of his mother, and the mother invited and induced it, by her conduct, against the wishes of the father. Manifestly the case should not be considered as authority under the circumstances. But treat this, for the sake of argument, as a case where there was an abandonment of mother and child before the divorce, so that the court, in its discretion, placed the custody of the child with the mother as a matter of necessity, but without provision for compensation for its support, and we then have, substantially, *Finch v. Finch*, 22 Conn. 411, decided in 1855, cited in the opinion of the court, but unfortunately, the part

of the opinion relied upon, which refers approvingly to *Stanton v. Willson, supra,* is from the dissenting opinion of Justice ELLSWORTH, while the rule of the early case, in the opinion of the court by Chief Justice CHURCH, one of the most eminent jurists that has graced the bench of that court, was expressly disapproved. The contention was that because of the duty the father owed to the child, the mother who supported it could herself enforce that duty by recovering compensation for her services in a direct action for that purpose. In deciding the case, the court said, in effect, that the question is not what are the reciprocal rights of the children and parents as respects each other, but what are the duties as between themselves; that a divorced wife who has taken the children from the father, stands in no more favorable position to recover for their support than a stranger; that the mere moral duty to support is not sufficient to support a promise; and that nothing short of a contract, express or implied, will warrant a recovery. Speaking of the claim made, that the difficulties which broke up the home and led to the divorce and award of the custody of the child to the wife should be held sufficient to support a contract obligation to pay for the necessary support of the child (the theory mentioned by my brethren in support of the decision here), the court said: "*Stanton v. Willson is the only case that we know of in which such a claim has ever been sustained.*"

From the foregoing we might proceed at great length to review the authorities, substantially all in accord as I read them, that no recovery can be had in a case like this, except upon a contract obligation, and that the doctrine is elementary that mere moral or legal duty, as between parent and child or the parent and the public, constitutes no foundation for the liability, nor is it material at all except as circumstances from which a promise may be inferred; and that such inference cannot arise when in fact repelled by the proof that the father was anxious and willing to support his child

and was prevented from doing so by the conduct of the child or the mother, or both, as in this case. Says Lord ABINGER, C. B., in *Mortimore v. Wright*, 6 Mees. & W. 482: "A father, who gives no authority and enters into no contract, is not liable for goods sold to his infant son. The mere moral obligation affords no inference of a promise." The idea discussed by Lord ABINGER was that, so long as the father stands willing to support his child so that support is not of necessity furnished by a stranger, he incurs no obligation to another in the absence of a contract of some kind. So in *Seaborne v. Maddy*, 38 Eng. C. L. 194, it was held that no one is bound to pay another for maintaining his children unless he has entered into some contract so to do; that every man is to maintain his own children as he himself shall think proper, and it requires a contract to enable another to perform that duty and charge him in an action. To the same effect is the entire body of English law on the subject, from the time of Blackstone to the present, and to the same effect are substantially all American authorities as I read and understand them. *Cushman v. Hassler*, 82 Iowa, 295; *Jackson v. Mull* (Wyo.), 42 Pac. Rep. 603; *Lapworth v. Leach*, 79 Mich. 16.

The only question left is, Is there any circumstance here from which a contract can be inferred? It may be conceded that slight circumstances will be sufficient, but I am unable to find evidence of any such circumstances preserved in the record. On the other hand, the circumstances repel all such inferences. In *Cushman v. Hassler*, *supra*, it was held that, while from unexplained residence of a child with its mother, the legal custody being in the father, a contract may be implied to pay the latter for her services, when such residence is explained as contrary to the wish of the father the inference is effectually repelled. That appears to fit the circumstances of this case most perfectly, and is in accordance with reason and common sense. So in *Lapworth v.*

*Leach, supra*, it was held that the moral obligation is not sufficient to support by inference the existence of an implied contract; that where the mother voluntarily supports her child she cannot recover therefor as upon contract. The idea expressed by the court was that proof that the support was voluntary and that the father was willing to support the child himself, in the absence of any express promise or circumstances from which a promise to pay for the support could be implied, left no room for inference that a contract relation existed between the parties. Again, in *Ramsey v. Ramsey*, 121 Ind. 215, an exceedingly well-considered and instructive case, where the facts were much like those in the instant case, except the strong evidence of parental affection and desire of the father for the society of and privilege to educate and support his child in his own way that exists here did not exist there, the court said, in effect, that while the rule that by moral and legal obligation the duty was on the father, primarily, to maintain his infant child during the years of infancy and tenderness, the rule must also be recognized, which lies at the very foundation of all cases where a third person has discharged the obligation of the father, that it must in every instance be predicated upon contract, express or implied, and that mere voluntary residence of the child with the mother, without some evidence of abandonment on the part of the father, is not sufficient to show a promise by implication to compensate the mother for keeping the child.

We hesitate to go further in this discussion. The excuse for proceeding so far is the importance of the question involved, and the wide departure which, in my judgment, the decision rendered is from the settled rule on the subject. I cannot subscribe to the doctrine that, where a child resides with its mother by choice and through her maternal influence over it, after the father has exhausted all the resources that strong affection for his child can suggest to secure his

presence under the paternal roof, he can be held liable to the mother because of the moral or legal obligation to support, which, under the circumstances, cannot be said to have been violated at all, unless it be a violation not to proceed to the extreme of compelling obedience of the child by force or legal proceedings. I cannot subscribe to the doctrine that a father can be held liable as upon an implied promise, when all the circumstances obviously repel such an implication; that after he has done all above indicated, in order to be saved harmless from the liability of being called upon and compelled to respond to a third party for the expense of supporting his child, he must resort to the extremity of compelling the child's obedience. If such is the law, any disobedient child may desert his father's home, accept support from another, and a right of action will thereby accrue to such other against the father for the child's support. The law has been held contrary to such view, as I understand it, for time out of mind. The fact that the person furnishing the support away from the parental roof is the mother does not change the rule, but the moral obligation of the mother and the maternal relation to the child, and the natural desire for his society rather repel than support an implication of implied contract relations.