ROSE M. CASTAGNOLA *v.* ALFRED S. FATOOL

MALTBIE, C. J., BROWN, DICKENSON, BALDWIN AND ALCORN, JS.

Argued January 6—decided February 28, 1950.

*Louis Stein,* for the appellant (plaintiff).

*Herbert B. Wanderer,* for the appellee (defendant).

MALTBIE, C. J.   The plaintiff, former wife of the defendant but divorced from him and remarried, brought this action to recover for the support of a minor child of the parties custody of whom was awarded to her in the divorce decree but without any provision for his support.   From a judgment for the defendant she has appealed.

The trial court concluded in effect that the plaintiff's right to recover was controlled by General Statutes, § 7340, which requires the divorced parents of a child to maintain him "according to their respective abilities," and that as there was no evidence of the ability of the defendant to furnish support there was no basis upon which judgment could be rendered in favor of the plaintiff.   In *Stanton* v. *Willson,* 3 Day 37, we had two cases before us.   In one, the plaintiff presented a claim against the estate of her former husband to recover moneys expended for and support furnished to certain children of the marriage after she had secured

a divorce from him and been appointed their guardian by act of the General Assembly. The trial court (p. 40) directed the jury to find for the plaintiff to recover "such .part of the account as was just and reasonable, taking into their consideration the situation and circumstances of the respective parties." We sustained the judgment. In the course of the opinion, we said (p. 56) that as guardian of the children the plaintiff had the same right to recover from their father as would a stranger under a like appointment. That statement went beyond the actual issue in the case and would seem to lead to the conclusion that the mother could recover for all the support she had furnished them. In *Finch* v. *Finch,* 22 Conn. 411, the plaintiff, the mother of a minor child, made a claim upon the estate of her former husband for the entire cost of the support of a child who had been born to them and whose custody had been awarded to her in the divorce action. We held (p. 416) that the legal liability of each parent necessarily depended upon his or her ability to furnish maintenance, and we said (pp. 417, 421): "At least, the equal obligation of these parties, *as parents,* by the dissolution of the marriage, yet exists. We have, therefore, a case, in which one of the parties, whose duty it is to maintain these children, and to contribute equally, so far as we know, to this object, is seeking to recover the whole expense of such maintenance, from the other. . . . It seems to a majority of the court, that the sole obligation of supporting the children, which was thrown upon the husband and father, by the state of coverture, is essentially changed, or modified, by the dissolution of the marriage. And now, their pecuniary condition and ability may be equal, or otherwise. The mother may have ample means, and the father none, and in such case, surely, it would be inequitable, to charge the father with the

entire maintenance of the children, while they remain in their mother's service, and under her exclusive control; and we do not believe the common law imposes any such obligation." We referred (p. 420) to the statement in the opinion in *Stanton* v. *Willson,* supra, that as guardian of the children the mother had the right to charge the support of the children to the father, and disapproved it. Two of the judges dissented, substantially on the ground that at common law the primary duty to support children rested upon the father and that the divorce did not change that obligation; and the dissenting opinion closes with a suggestion that it was for the legislature rather than the court to alter that rule.

That decision was made in 1853. At the session of the General Assembly in 1854 an act was passed which is quoted in the footnote. Public Acts, 1854, c. 38.[1] The first section was a legislative adoption of the rule of liability announced in the majority opinion in the *Finch* case and would apply to a recovery of past support; and it made the basis of that liability "the abili-

---

[1] "Sec. 1. That upon the dissolution of any marriage by divorce, if there shall be a minor child or children of such marriage who shall stand in need of maintenance or support, it shall be the duty of the parents of such child or children to provide for support and maintain them, according to the abilities of such parents respectively.

"Sec. 2. It shall be the duty of the superior court upon the application of either of the parents of such child or children, contained in any petition for divorce, or upon petition or application afterwards, to inquire by proper proof, into the amount of the property or estate of both of such parents, and into the ability of such parents respectively to provide for the maintenance and support of such child or children; and in reference to the same, such court may make such order and draw against either or both of said parents for the support and maintenance of such child or children, as it shall consider just and equitable—and by such order and decree may direct any proper security to be given for such support and maintenance, or may enforce such decree as said court shall make for such support and maintenance, by any proper proceeding usual in courts of equity."

ties of such parents respectively." The second section authorized an order either in divorce proceedings or by a petition subsequent to the granting of a divorce for the support of minor children of the marriage, in such a sum as the court should find to be "just and equitable"; the terms of this section are closely analogous to those of the statute then in existence concerning orders for support of poor persons by their relatives; Statutes, 1849, p. 540, § 31; that statute had already been construed not to be applicable to a recovery of past support; *Newtown* v. *Danbury*, 3 Conn. 553, 559; and there can be no question that the second section of the 1854 act was intended to operate prospectively.

In 1876, *Welch's Appeal from Probate,* 43 Conn. 342, came before us. Again the question presented was whether a mother who had been awarded a divorce and the custody of a minor child of the marriage had a valid claim against the estate of the deceased father for the support of the child. The matter was referred to a committee, which found (p. 343) that, if the father "was liable to pay the appellant a fair proportion of the necessary expense of such support according to his pecuniary ability," a certain amount would be "a just and fair proportion of such expense for his estate to pay." The case was reserved to us and one of the questions asked was whether the mother was entitled to recover "the expense of supporting the child referred to in the report." Counsel for the estate (p. 347), proceeding upon the assumption that the act of 1854 was merely declaratory of pre-existing law, claimed that the divorce terminated all claims which the mother had upon the father by virtue of their having been married and that, as no order of support had been sought in the divorce action, the mother must be deemed to have voluntarily assumed the burden of it. We answered the question propounded in the affirma-

tive; and the effect of that decision was to hold that the mother was entitled to recover so much of the support of the child as represented a fair and reasonable proportion for the father to pay. In the course of the opinion we said (p. 350) that the case was distinguishable from the *Finch* case; and it clearly was, because there the mother claimed to recover the entire support of the child, not a just proportion of it. We then went on to say that "the principles enunciated by this court in the case of *Stanton* v. *Willson*, 3 Day 37, certainly sustain the plaintiff's claim"; that is so as regards the basic principle enunciated in that case, that after divorce the obligation of the father for the support of the child continues; and the statement was no doubt made in answer to the contention of the estate that after divorce the mother could have no claim upon the father for the support of the child. Finally, we said that the statute of 1854 "exercises an important, if not a controlling, influence over this case," and stated that it provided that, after divorce, the parents of a minor child "shall maintain it according to their respective abilities."

There is no inconsistency in the decisions of this court in the *Finch* and *Welch* cases; in both we held that, after divorce, the mother is entitled to recover of the father only so much of the support she has furnished a minor child as is just and reasonable in view of their respective abilities; and that accorded with the terms of the statute of 1854 dealing with the matter. It is true that in the Revision of 1875 (p. 189, § 9) the provisions of the act of 1854 were consolidated into a single section and much abbreviated, and in subsequent revisions the language was further abbreviated and somewhat changed. General Statutes, Rev. 1888, § 2812; Rev. 1902, § 4561; Rev. 1918, § 5292; Rev.

1949, § 7340.[1] It is presumed that changes in the language of a statute made when it is incorporated into a revision are not intended to alter its meaning and effect, and this is particularly true of the Revision of 1875. *Bassett* v. *City Bank & Trust Co.*, 115 Conn. 393, 401, 161 A. 852; *State* v. *Muolo,* 118 Conn. 373, 384, 172 A. 875. As regards the issue before us, the intent of the statute applicable to this case is the same as that of the act of 1854.

The trial court was correct in holding that the plaintiff's right to recover was determined by the statute and that, without any basis for a finding as to the ability of the defendant to furnish support for the child, it could not determine, in the words of the statute, "the respective abilities" of the parties to support him and so could not render a judgment for the plaintiff.

There is no error.

In this opinion the other judges concurred.

---

[1] "CHILDREN HOW SUPPORTED. Upon the dissolution of any marriage by divorce, the parents of a minor child of such marriage, who is in need of maintenance, shall maintain such child according to their respective abilities, and, upon the complaint of either parent, then or thereafter made to the superior court, it shall inquire into their pecuniary ability, and may make and enforce such decree against either or both of them, for the maintenance of such child as it shall consider just, and may direct security to be given therefor."