# DEMONET v. BURKART.

DIVORCE; FINAL DECREES; ALIMONY; CHILDREN, CUSTODY AND MAINTE-
NANCE OF; EQUITY JURISDICTION.

1. Where a decree of divorce *a vinculo* contains a provision for the pay-
ment of alimony by the defendant at a specified rate until further
order of the court, the decree is not final so far as the payment of
alimony is concerned, and it is within the jurisdiction of the court
to thereafter require the defendant to pay to the complainant arrears
of alimony accruing after the date of the decree until the date of her
second marriage, together with costs of suit.

2. Where a decree of divorce *a vinculo* makes no provision for the custody
of a child of the parties although the wife in her petition for divorce
prays for its custody, and it appears that, after the decree of divorce
and until a second marriage, the complainant voluntarily assumed
and exercised the sole care and custody of the child, although the
defendant offered to assist her in its support and education, which
offer the complainant declined, the court is without the power ten
years after the date of the divorce to reopen the case and pass an
order in the cause directing the defendant to reimburse the com-
plainant for expenses so voluntarily incurred by her in the support,
maintenance, and education of the child, from the date of the decree
until the complainant's second marriage. The remedy of the com-
plainant, if any, which is doubtful, is in a court of law, and not in
the equity cause.

No. 1321.    Submitted December 8, 1903.    Decided April 5, 1904.

HEARING on an appeal by the defendant from an order of
the Supreme Court of the District of Columbia overruling ex-
ceptions to and confirming a report of the Auditor and directing
the defendant to pay to the complainant the amount found by
the Auditor's report to be due from him to her for arrears of
alimony and for the support and maintenance of their child.

*Reversed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a decree of the supreme court of the

District of Columbia overruling exceptions to and confirming a report of the auditor, and requiring the appellant to pay to the appellee the amount therein found due and payable to her as alimony, and on account of her expenditures for the support of their infant daughter, including costs of suit.

The facts upon which said decree is based are in substance as follows: On January 27, 1891, the appellee, Margaret Burkart, then Margaret Demonet, filed her bill in the supreme court of the District of Columbia against the appellant, George H. Demonet, for absolute divorce on the ground of cruel treatment, endangering her life and health, and for the care and custody of their child, Ida M. Demonet, who was then about five years of age. The bill not being contested, the court, on the 4th day of March, 1891, ordered that default be entered against the defendant, and appointed one of its examiners in chancery to take testimony on behalf of the complainant.

On April 15, 1891, the complainant filed her petition in said cause, praying alimony *pendente lite,* and thereafter permanent alimony for the support of herself and said child.

On May 11, 1891, the court passed an interlocutory order, based upon said petition, which provided that the "defendant, George Demonet, shall pay to the complainant, or shall bring into this court to be paid her, the sum of $15 per month, the first payment to be made on the 20th day of May inst., and thereafter on the 20th day of each succeeding month until the further order of the court."

On July 15, 1891, the court passed a final decree of divorce *a vinculo matrimonii* in which it was "further ordered and decreed that the defendant shall continue to pay as alimony the sum heretofore allowed to the complainant by order of the court passed on the 11th day of May, 1891, until the further order of this court, and that the defendant shall pay the costs of this proceeding."

Neither the interlocutory order of May 11, 1891, nor the final decree of divorce, made any provision respecting the custody and support of the child. Thereafter, in April, 1892, there were some supplementary proceedings seeking to have

the appellant adjudged in contempt for failure to pay the alimony thus awarded, but upon the showing made by the defendant, through his own and other affidavits set out in the record, to the effect that he was impecunious, these supplmentary proceedings, so far as the record discloses, were abandoned.

It is true the court, on April 23, 1892, referred the case to an examiner in chancery to take proof as to the allegations of the petition and the defendant's affidavit, but, so far as the record shows, no further step was taken in the case until nearly ten years later, *viz.,* May 2, 1901. The appellant having in the meantime married, she thereupon, on said last-named date and under her then married name of Margaret Burkart, filed her petition against her former husband, the appellant, praying that he be required to reimburse her for the sums theretofore expended by her in the maintenance and education of their said child, and for her future maintenance and education, and that he also be required to pay to the appellee the accrued alimony from the date of her said divorce, July 25, 1891, to the date of her second marriage, August 20, 1892, and the cost of suit. To this petition and to the rule to show cause why the prayers thereof should not be granted, the appellant filed his answer, denying all liability on account of these claims upon two grounds: First, that if the petitioner had any remedy at all it was in a court of law; and second, that the court was without jurisdiction to decree the relief prayed, for the reason that no right was reserved to the complainant in said decree for any further order respecting the cost of maintaining said child.

Thereupon, on June 3, 1901, the court passed an order referring the cause to the auditor for his report, to be based upon the testimony already taken in said cause as well as upon such further testimony as the parties might adduce before him, and to state particularly therein:

1. The amount of costs of suit which were paid by the petitioner in this cause and which were ordered by the decree therein to be paid by the defendant Demonet.

2. The amount of the disbursement made by the petitioner

for the infant daughter of the defendant, for its support, clothing, and education.

3. The amount of alimony which under the decree for divorce in this cause was due and unpaid to the petitioner by the defendant at the time of the second marriage of the petitioner.

On June 20, 1902, the auditor filed his report in the cause, finding in favor of the petitioner, Margaret Burkart, as follows:

| | | |
|---|---:|---:|
| Alimony owing by the defendant to the petitioner from July 25, 1891, to August 20, 1892, thirteen months, at $15 per month | $195 | 00 |
| Amount of costs owing by defendant | 259 | 00 |
| | $454 | 00 |
| Amount expended for infant's maintenance and education | 2,777 | 29 |
| Total | $3,231 | 29 |

To this report the appellant filed his exceptions, July 22, 1902, and on March 20, 1903, the court passed the following decree of order, overruling the same and confirming said report:

"It is, therefore, this 20th day of March, 1903, by the authority of the court, adjudged and ordered that the said exceptions be, and the same are hereby, overruled, and the said auditor's report be and the same is hereby ratified and confirmed, and the defendant, George H. Demonet, is hereby ordered to pay to the petitioner, Margaret Burkart, the amount found by said auditor's report due and payable from the defendant to the said petitioner, Margaret Burkart, and the costs of this proceeding."

From this order of affirmance the present appeal is taken.

*Mr. G. E. Hamilton, Mr. M. J. Colbert,* and *Mr. J. J. Hamilton* for the appellant.

*Messrs. Thompson & Laskey,* for the appellee

1. The decree granting the divorce and awarding alimony in this cause did not become final so as to deprive the court of jurisdiction at a subsequent term to open the cause and make such further orders in the case regarding alimony and the maintenance of the child of the marriage as under all the circumstances would be right and proper. *Alexander* v. *Alexander,* 13 App. D. C. 334.

2. At common law the husband was primarily liable for the support of his minor children. Where the marriage is dissolved by divorce and the decree of divorce makes no provision for the support of the children, the father's duty and obligation to support the children continues as at common law, and the mere divorce does not terminate his liability for the support of the children. *Re Zilly,* 98 Wis. 428; *Pretzinger* v. *Pretzinger,* 45 Ohio St. 452; *Erkenback* v. *Erkenback,* 96 N. Y. 456; *Plaster* v. *Plaster,* 47 Ill. 290; *Holt* v. *Holt,* 42 Ark. 495; *McKay* v. *Superior Court,* 40 L. R. A. 585; Bishop, Marr. Div. & Sep. § 1223; *Dunbar* v. *Dunbar,* 190 U. S. 340–351. The divorce in this case being due to the cruelty and misconduct of the defendant, and the decree being silent as to the custody and maintenance of the child, the defendant, its father, cannot escape the duty and obligation imposed alike by nature and the law upon him to support the said child or to reimburse others for affording his child such maintenance.

3. The proper mode of procedure where the divorced wife seeks to recover of the father the disbursements made in the maintenance and education of the children is to file a petition in the original cause in which the decree of divorce was entered. *McKay's Case,* 40 L. R. A. 585; *Holt* v. *Holt,* 42 Ark. 495; *Plaster* v. *Plaster,* 47 Ill. 290; *Wilson* v. *Wilson,* 45 Cal. 401; *Erkenback* v. *Erkenback,* 96 N. Y. 456; Bishop, Marr. Div. & Sep. § 1099; *Alexander* v. *Alexander, supra;* 1 Pom. Eq. Jur. §§ 180, 181; *Clark* v. *White,* 12 Pet. 178–188; *Fran. Ins. Co.* v. *McCrea,* 4 Green, 229; *May* v. *Taylor,* 7 Ga. 238–244; *Brooks* v. *Stolley,* 3 McLean, 523–527; *Zetelle* v. *Meyers,* 19

Gratt. 62; *People* v. *Chicago,* 53 Ill. 424; *Waite* v. *O'Neil,* 72 Fed. 356; *Gorman* v. *Clark,* 134 U. S. 338.

4. The obligation of a father to support his child is a continuing one, and so long as this duty continues the statute of limitations does not run against the right of the mother to sue for the maintenance past and future.      19 Am. & Eng. Enc. Law, 2d ed. p. 201, note 9; *Dunbar* v. *Dunbar,* 190 U. S. 340; *Carr* v. *Carr,* 6 Ind. App. 377.    See also as to continuous contracts 19 Am. & Eng. Enc. Law, 2d ed. p. 201, and notes.

5. Having availed herself of every means allowed by the law to recover the arrears of alimony, and being assured, as was the court also, that the defendant would pay it as soon as he was able, the refusal now to grant the petitioner this relief would be opposed to every principle of equity governing the award of such allowances.    This is not a case for the application of the general rule that alimony in arrears cannot be allowed for more than one year next preceding the application.    Bishop, Marr. Div. & Sep. § 1098.

6. Costs follow the judgment and are to be paid by the unsuccessful party to the one who prevails unless the court shall in express terms adjudge to the contrary.    Costs when allowed are the property of the party recovering them and not of his attorney, although they may be subject to the lien of the latter for his own costs.    5 Enc. Pl. & Pr. p. 122.

Mr. Justice ANDERSON of the supreme court of the District of Columbia, who sat with the Court in the hearing of this appeal in the absence of Mr. Chief Justice ALVEY, delivered the opinion:

The assignments in error are as follows:

1. The court below erred in confirming the auditor's report.

2. The court below erred in overruling the exception to the auditor's report.

3. The court below erred in overruling each one of the sixteen exceptions to the auditor's report filed by the appellant.

These assignments of error involve the consideration of the

question of the continuing jurisdiction of the courts in divorce proceedings. So far, however, as the jurisdiction of the court over the allowance of alimony is concerned, there can be no possible question. The decree of divorce expressly reserved to the court the right to thereafter deal with that subjcet, the language of the decree being: "It is further ordered and decreed that the defendant shall continue to pay as alimony the sum heretofore allowed to the complainant by the order of the court on the 11th day of May, 1891, until the further order of this court." It follows, therefore, that so far as the jurisdiction of the court touching the allowance of alimony is concerned, the decree of July 25, 1891, was not final, and hence the court below was clearly within its jurisdiction in requiring the appellant to pay to the appellee, in addition to the costs of suit, alimony at the rate named in said decree from the date thereof, July 25, 1891, to the date of her second marriage, August 20, 1892.

This brings us to the main question involved in the case, *viz.,* whether the court was without jurisdiction, under the circumstances of this case, to require the appellant to pay to the appellee the $2,777.29, or any part thereof, expended by her in the maintenance and education of their infant daughter. It is contended on behalf of the appellant that the court was without jurisdiction to make such decree, for the reason that the decree of divorce of July 25, 1891, was, in that respect, final.

On the other hand, it is contended on behalf of the appellee that such decree did not become final so as to deprive the court of jurisdiction to thereafter, upon a proper showing, reopen the case and make such further orders therein touching the maintenance and education of the child as to the court might seem right and proper.

As specifically applicable to this question the following section of the Revised Statutes for the District of Columbia, in force at the date of the decree of divorce, July 25, 1891, may be cited:

Section 747 provides that "the court shall also have power to order and direct, in every case of divorce, who shall have the

guardianship and custody of the children of the marriage so divorced and who shall be charged with their maintenance."

Although the appellee, in her original bill, prayed that she be given the care and custody of the child, the decree of divorce, as already pointed out, made no provision in relation thereto, and therefore it must be assumed, in the absence of any suggestion in the record to the contrary, that she abandoned so much of her bill. It further appears from the record that from the date of the decree of divorce until the filing of her petition for reimbursement, the appellee voluntarily assumed and exercised the sole custody and control of said child, as well as the right to determine for herself the character and extent of the expenses incident thereto, without notice thereof or demand therefor upon the appellant, other than the filing of her said petition against him some ten years later, notwithstanding, as appears by appellant's substantially uncontradicted testimony set out in the record, he offered to assist her in the support and education of the child, which offer she promptly declined, giving as her reason therefor that she did not need his assistance, as her then husband, "Mr. Burkart, was acting kind and gave her everything for the child and herself."

Had the court in this situation of the case and under the terms of its decree of July 25, 1891, jurisdiction to reopen the case and by its further order require the appellant to reimburse the appellee for the money thus expended by her during the nearly ten years that had elapsed between the date of said decree of divorce and the filing of her said petition? We are clearly of opinion that it had not; not because the court had no longer jurisdiction over the subject-matter,—the general doctrine of the courts of the United States being that jurisdiction over the custody and support of children in divorce cases is a continuing one; but because, in the very nature of the original decree, it being silent as to the custody of the child, there was nothing upon which to base its subsequent decree charging the appellant with the expenses theretofore incurred by the appellee for the child's support. These expenses were incurred, not because she had been awarded the custody of the child; not because the

father had abandoned or refused to support it; not because she was obliged to do so from any considerations of humanity or other imperative demand upon her disclosed by the record, but simply because she chose to do so as a matter of personal preference.

Inasmuch as the jurisdiction of the courts over the custody and support of children in divorce cases is a continuing one, the court below had the undoubted right to reopen the case, and upon a proper showing award the future custody of the child to the mother, and to decree its future support against the father, but there is nothing in the decree of July 25, 1891, nor in the circumstances of the case, upon which to base a decree requiring the appellant to reimburse the appellee for the expense thus voluntarily incurred and paid by her prior to the filing of her said petition.

So far as the decree related to the dissolution of the marriage it was absolute and final, and so far as it is related to the alimony awarded to the wife, which was the only question therein reserved, it is conceded by counsel on both sides, and was so held by the court below, that it became final upon her marriage to Burkart.

In *Bowman* v. *Worthington,* 24 Ark. 522, the court said: The subsequent remarriage of the wife annuls the allowance of alimony, and therefore, on the death of her second husband, the wife cannot claim the alimony allowed her from her first husband.    See also *Sidney* v. *Sidney,* 4 Swabey & T. 178, 34 L. J. Prob. N. S. 122, 11 Jur. N. S. 815, 12 L. T. N. S. 826; *Albee* v. *Wyman,* 10 Gray, 222; *Olney* v. *Watts,* 43 Ohio St. 499, 3 N. E. 354; *Bankston* v. *Bankston,* 27 Miss. 692; *Stillman* v. *Stillman,* 99 Ill. 196; 2 Bishop, Marr. & Div.  par. 434.

This being all that was comprehended in the original decree, and such decree having thus served its full and final purpose, that was the end of it.    According to the great weight of authority upon the subject, the situation of the case would not be essentially different had the court decreed the custody of the child to the mother, without providing for its support.

"When a wife has applied for the custody of the child and

obtained it without asking a decree for its maintenance, she must be deemed to have assumed the burden of its support and relinquished all claims upon the father." 9 Am. & Eng. Enc. Law, p. 872; *Finch* v. *Finch,* 22 Conn. 412; *Husband* v. *Husband,* 67 Ind. 583, 33 Am. Rep. 107; *Cushman* v. *Hassler,* 82 Iowa, 295, 47 N. W. 1036; *Brow* v. *Brightman,* 136 Mass. 187; *Burritt* v. *Burritt,* 29 Barb. 124; *Fulton* v. *Fulton,* 52 Ohio St. 229, 29 L. R. A. 678, 49 Am. St. Rep. 720, 39 N. E. 729.

If under such a decree the father would not be liable for the support of the child, then *a fortiori* would he not be where, as in this case, in the absence of such a decree, the mother not only voluntarily retained its custody and exercised sole control over its person, education, and support, but declined the proffered assistance of the father in paying the expenses incident thereto?

"As a general rule the obligation to support the child rests primarily upon the father, but even this is governed more or less by the peculiar circumstances of each case." *Burritt* v. *Burritt,* 29 Barb. 124.

While it cannot be questioned that where the marriage is dissolved by divorce, and the decree, as in this case, makes no provision for the custody and support of the children of the marriage, the father's duty and obligation continues as at common law; on the other hand, this duty is reciprocal to the right of the father to the custody and services of his children, and if in such case he is deprived thereof by the voluntary assumption of their custody by the mother, such custody must, in the absence of evidence to the contrary, be presumed to carry with it the obligation to support them. *Burritt* v. *Burritt,* 29 Barb. 124; *Brown* v. *Smith,* 19 R. I. 319, 30 L. R. A. 680, 33 Atl. 466.

In a late case, in which the mother was awarded the custody of the child without provision by the court for the child's support, the court said: "The law presumes that every question involved in the action in which the judgment was rendered— and the right of the plaintiff to an allowance for the maintenance of the child was one of those questions—was passed upon by the court, and that the claim for such maintenance was

decided adversely to the plaintiff." *Rich* v. *Rich,* 88 Hun, 566, 34 N. Y. Supp. 854.   See also *Husband* v. *Husband,* 67 Ind. 583, 33 Am. Rep. 107; *Brown* v. *Smith,* 19 R. I. 319,, 30 L. R. A. 680, 33 Atl. 466.

There are numerous cases where, upon proper application for the support of the children of the divorced parents, the courts. have decreed such support, simply upon the ground of parental duty.     But even in such case it is held, in substantially all the well-considered cases, that such compensation can go only for the future and not for past support.     *Thomas* v. *Thomas,* 41 Wis. 229; *Courtright* v. *Courtright,* 40 Mich. 633; *Ramsey* v. *Ramsey,* 121 Ind. 215, 6 L. R. A. 682, 23 N. E. 69.

In discussing this aspect of the case, Mr. Justice Marshall, in *Zilley* v. *Dunwiddie,* 98 Wis. 438, 40 L. R. A. 579, 67 Am. St. Rep. 820, 74 N. W. 126, said: "Allusions are made to the moral and legal duty of a father to maintain his child, with which all concur, but obviously that mere duty is one enforceable only by the public.   In an action by a private individual such duty is only a circumstance to be considered in determining whether contractual relations, express or implied, exist between the parties."

There is a marked distinction, however, between parental duty to the child which the public may enforce, and duty as evidence of a contract that may be enforced by a private person privy thereto, by a personal action at law.

The question here is not what are the reciprocal rights of this child and its parents as respects each other, but what are the duties and obligations of the divorced parents, as between themselves, in respect of the child's support.

While the relations of the parties to the child were not changed by the decree of divorce, their relations to each other were.   From the moment the decree was passed the relation of Mrs. Burkart to her former husband was that of a stranger, and therefore, in the absence of an obligation on his part, arising out of a contract, express or implied, she stands in no better position to recover for the expenses incident to the past support of the child than would a total stranger.

The moral and legal duty of a father to support the child is not sufficient in itself to support a promise. At most it is a circumstance from which, in connection with other facts and circumstances of a given case, a promise may be inferred. But no such inference can arise in this case, where it is repelled by ample proof that the appellant offered to contribute to the support of the child, which the appellee declined, on the ground that both she and the child were being supported by the second husband.

Lord Abinger, C. B., in *Mortimore* v. *Wright,* 6 Mees. & W. 482, 9 L. J. Exch. N. S. 158, 4 Jur. 465, says: A father who gives no authority and enters into no contract, is not liable for goods sold to his infant son. The mere moral obligation affords no inference of a promise.

To the same effect is *Seaborne* v. *Maddy,* 9 Car. & P. 497. It was there held that no person is, in the absence of a contract so to do, bound to pay another for supporting his children. To the same effect is the entire body of the English law, and, with few exceptions, all our American authorities.

Among the cases cited by counsel for the appellee in support of their contention is that of *Alexander* v. *Alexander,* 13 App. D. C. 334, 45 L. R. A. 806. In that case a divorce *a vinculo* was granted at the suit of the wife, with a certain fixed monthly sum as alimony, and the right to apply for an increase, but without any reservation to the husband to apply for a reduction. After some years the defendant petitioned the court to reduce the alimony, and a decree was entered reducing the alimony as prayed.

In affirming that decree this court said:

"The authorities appear to be unanimous to the effect that the adjudication was a continuing one, and that the courts retained the whole subject under their control, increasing or diminishing the amount of alimony from time to time, as might seem just under changed or changing circumstances, and this without reference to the fact that the original decree might have been entirely silent in regard to the reservation of right to the parties, or either of them, thereafter to apply to the court for a

modification. Bishop, Marr. & Div. § 593; Am. & Eng. Enc. Law, title 'Alimony,' where numerous cases on the subject are collected."

The court further said: "We think that a decree for the payment in payments periodical and of indefinite continuance was necessarily a decree for continuing superintendence by the courts, and which, therefore, for good cause accruing afterwards, the court might properly modify so far as concerned its future execution."

While this case is authority for the general proposition that in the matter of the custody and maintenance of the children of divorced parents the court must necessarily retain a continuing jurisdiction, it has but a remote bearing upon the question under consideration.

So far as the "future execution" of the decree under consideration is concerned there remained but one single feature of the decree to be executed, *viz.,* that relating to alimony.

It is nowhere suggested in that case that the court in the exercise of such jurisdiction may reopen a case of this character, and by a supplemental and retroactive decree require the father to reimburse his divorced wife for past expenditures in the support of the child of the marriage, whose custody and maintenance she had voluntarily assumed.

If the decree of divorce of July 25, 1891, was not satisfactory to the appellee because it did not award to her the custody of the child, and charge the father with its maintenance, she should have first applied to the court in due time to reopen the case and amend its decree in this regard, and if successful, her expenditures thereafter for the support of the child, instead of being self-imposed, would have been under the authority of the court, and therefore properly chargeable against him.

"If the decree contains no provision for the support of the children, the only remedy of the wife is to have the order modified by the court which granted it, and an order for such maintenance, as the husband is not liable to his divorced wife for the support of the children after divorce, unless the decree im-

posed such liability." 7 Enc. Pl. & Pr. p. 131, and numerous cases there cited.

In most all of the cases cited by counsel for the appellee, the decree of divorce expressly awarded the custody of the child to the mother; and the courts held that such decree, to the extent of the cost of supporting such child, was a continuing one, and therefore they do not apply to the precise question here involved. The case most nearly like the present one, cited in the brief of counsel for the appellee, was that of *Zilley* v. *Dunwiddie,* 98 Wis. 428, 40 L. R. A. 579, 67 Am. St. Rep. 820, 74 N. W. 126.

While, as was said by Mr. Justice Marshall, in his able dissenting opinion in that case, it is difficult to discern with certainty the grounds upon which this decision is placed, there is this well-defined distinction between that case and the one under consideration.  In that case, the father, upon the expiration of the time during which the mother was awarded the child's custody, demanded of the mother the future custody of the child, and served notice upon her that if she continued to retain its custody he would not pay for its future support.  The child, however, refused to reside with its father, and the mother, without waiving her right to claim reimbursement from the father, continued to support the child.  The court held that the father being entitled, by the express terms of the decree, to the custody of the child, after it reached the age of ten years, and failing to enforce that right, a promise on the part of the father to compensate the mother for her necessary expenses in supporting the child would be implied from his acquiescence in such maintenance by the mother.

In this case no such promise can be implied, because, while the father was legally entitled to the custody of the child, he refrained from enforcing that right and permitted it to remain with the mother, not because the child refused to quit the custody of the mother and live with him, and thus by its own act creating the necessity for its future support by the mother, and the consequent obligation of the father to pay for such support, as in the *Zilley Case;* but because the mother of her own voluntary choice retained the custody and companionship of the child

and assumed the right to support it in her own way and according to her own judgment, and in disregard of the father's expressed willingness to assist in its maintenance.

Another case cited by counsel for the appellee is that of *Pretzinger* v. *Pretzinger,* 45 Ohio St. 459, 4 Am. St. Rep. 542, 15 N. E. 471, decided in 1887. In that case the divorce was granted upon the application of the wife on account of the fault of the husband. The mother was awarded the custody of the child and alimony, but with no provision for the child's support. Subsequently the divorced wife brought an original suit at law against the father to recover for the sums theretofore expended by her for the child's support, and her action was sustained on the ground of parental duty.

Apart from the essential distinction between that case and the case at bar, namely, that that was an action at law to recover the disbursements of the wife for the support of the child, *while in her custody under the decree of the court,* the decision of the court in that case, tested by the later judgment of the same court in *Fulton* v. *Fulton,* 52 Ohio St. 229, 29 L. R. A. 678, 49 Am. St. Rep. 720, 39 N. E. 729, decided in 1895, cannot be regarded as authority in support of the appellee's contention. In that case, which was also a suit at law, the same question involved in *Pretzinger* v. *Pretzinger,* 45 Ohio St. 459, 4 Am. St. Rep. 542, 15 N. E. 471, was again presented to the court, except that the decree of divorce was granted upon the application of the husband for the misconduct of the wife. It was there held that: "Where a divorce *a vinculo* has been granted to a husband on account of the aggression of the wife, and the minor children of the parties assigned to the custody of the divorced wife, without an order respecting their maintenance, and while so in her custody she furnished to them necessaries, she cannot recover against her former husband, their father, for her expenditures in this behalf in the absence of proof of a promise by him to pay for such necessaries, or of a request that they should be furnished to the children." *Fulton.* v. *Fulton,* 52 Ohio St. 229. 29 L. R. A. 678, 49 Am. St. Rep. 720, 39 N. E. 729.

It is true that the court, instead of directly overruling the *Pretzinger Case,* distinguished the two cases on the ground that the divorce in the former was for the fault of the husband and the latter for fault of the wife. The observations of Marshall, J., in *Zilley* v. *Dunwiddie,* 98 Wis. 428, 40 L. R. A. 579, 67 Am. St. Rep. 820, 74 N. W. 126, upon this so-called distinction are pertinent in this connection:

"The right to recover, so far as it could be sustained on moral and legal duty, did not change in any respect by the circumstance that the divorce was granted for the fault of the wife. In both cases the divorced husband and wife were strangers to each other. The learned and very able court would have made a more orderly retreat from its early position by saying that it was based upon a wrong principle, for the two cases are manifestly inconsistent, and the result of trying to harmonize them presents the appearance ordinarily observed where the effort is made to preserve consistency by trying to harmonize things that are diametrically opposed to each other."

In any view of the case it is manifest that if the appellee is entitled to be reimbursed by the appellant for the expenditures in question, her remedy, if any she has, which may well be doubted, is in a court of law and not in this proceeding. To require the appellant, under the circumstances of this case, to reimburse the appellee, would be to assume that the mother and not the father of the child was its rightful custodian, and as such had the right to support and educate the child according to her own judgment and at his expense, and for which he must stand ready to respond upon the call of the mother. The statement of the proposition carries with it its own condemnation.

When it is remembered that a divorce *a vinculo matrimonii* contemplates an absolute and final separation of the parties, and that in legal contemplation they are to each other as strangers, the divorced mother no more than a stranger can, in the absence of a proper order or decree of the court, or their abandonment by the father, assume the custody of the children, and then require him to reimburse her for the cost of their maintenance. It follows, therefore, that with the exception of so

much of the decree appealed from as relates to alimony and costs of suit, said decree must be reversed with costs.

The cause will be remanded to the Supreme Court of the District of Columbia, with directions to vacate said decree and to enter a decree allowing alimony to the complainant, as prayed, and dismissing her petition as to the matter of allowance for the support of the child.

And it is so ordered.                             *Reversed.*