## MONCURE v. MONCURE.

(Court of Appeals of District of Columbia. Submitted February 9, 1922. Decided March 6, 1922.)

### No. 3637.

1. **Divorce ⬳37(1)—Separation and intent must exist together to constitute "desertion."**

Actual separation and intention to desert must exist together to constitute desertion, which is made a ground for separation from bed and board by Code of Law 1901, § 966, which fixes no definite period of desertion.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Desertion (in Divorce Law).]

2. **Divorce ⬳37(6)—Separation and intention to desert need not be identical in their commencement.**

Actual separation and intention to desert, which together constitute desertion, need not be identical in their commencement; but, if one antedates the other, the period of desertion dates from the inception of the other element.

3. **Divorce ⬲104—Petition charging desertion as of date of intention held not in bad faith.**

A petition for divorce and alimony, which alleged desertion by the husband as beginning on the date when a letter from him showed the fixed intention to desert his wife, though thereafter at his solicitation she had lived with him for a short time, does not, in view of the fact that no fixed period of desertion is required by statute, show bad faith on the part of the petitioner, which prevents amendment of her petition, so as to allege the date of desertion as the date of final separation.

4. **Divorce ⬲37(8)—Husband's conduct held to require special effort toward reconciliation.**

A husband, who had ignored his wife for a long period, and had written her a letter in which he charged her with most serious offenses, which he made no attempt to sustain by evidence, owed her the duty to express regret for his conduct and make special effort toward reconciliation, so that he cannot rely upon a telephone request to her to meet him and talk over their affairs as an effort toward reconciliation, especially when she was justified in assuming it was but another attempt on his part to arrange for divorce on his terms, as he had previously been trying to do.

Appeal from Supreme Court of the District of Columbia.

Suit for divorce by Olga S. Moncure against Thomas Hughes Moncure. From a decree dismissing the petition, plaintiff appeals. Reversed and remanded.

T. M. Wampler, of Washington, D. C., for appellant.

Joseph T. Sherier, of Washington, D. C., for appellee.

ROBB, Associate Justice. Appeal from a decree in the Supreme Court of the District dismissing the petition of plaintiff, appellant here, for a divorce with alimony.

In her petition, filed January 2, 1920, plaintiff alleged desertion as of April 1, 1917, and that her husband thereafter had contributed nothing toward her support. In his answer defendant denied "that he deserted plaintiff on the 1st day of April, 1917," and alleged that the parties cohabited in July and during the month of August, 1917; that "the parties did not separate until about the time the defendant left New York for France, as he was in duty bound to do as an officer in the United States Army."

Plaintiff's testimony was substantially as follows: She was married to defendant in 1912, and from 1916 to April of 1917 they lived in this city, defendant then being employed in the Geological Survey. On the latter date defendant had requested plaintiff to meet him at a placed named, and, after waiting for him several hours, she went home and found a note informing her he had left for the field, and would send her some money when he got his check at the end of the month. She was compelled to make inquiries at the Geological Survey to learn his whereabouts, and it was not until some time in May that she heard from him, and she "remembers the letter as being a very ugly one." She next heard from her husband in June following, when he telephoned her from Union Station in this city, requesting her to meet him, which she did, and they were together until 12 o'clock at night. He then informed her that he had received a commission in the army. When pressed for his reasons for the manner of his leaving

in April, defendant's answers were evasive and unsatisfactory. He informed plaintiff that he had been ordered to Newport, R. I., from which point he telegraphed her on August 1st to go there and that he would send her some money. She later received a letter inclosing $33, the only money she received from her husband after April of 1917, and went to Newport, where she remained for about two weeks, paying her own room rent, and then accompanied defendant to New York (he having received orders to sail for France), where they parted apparently as friends. The next direct communication plaintiff received from her husband was in October of 1918, although she had written him regularly in France about twice a week and sometimes oftener. This communication was in the form of a letter, in part as follows:

"You will probably be surprised to receive this letter, since it is only the second that I have felt that I had occasion to write you in the year and a half that we have been separated, and this one I have given due consideration before finally deciding to write. I do not know what your wish is on the subject, but you certainly have realized from the first day of our separation that any future for us together was impossible. The fact that you came to Newport, R. I., and against my wishes, while I was stationed at Ft. Adams, and that we parted apparently friendly, does not and has not altered this in the least. * * * If it had to be a choice between my having to return home and resume my life with you and having to be killed here in France, I don't think I would hesitate to choose the latter, for there are certainly some things worse than death. My object in writing you this letter is not to make any request of you, nor to make any threats, but rather in the hope that I may induce you to see as I do the desirableness of a divorce being secured by friendly agreement rather than by suit. Of course, you must be aware of the fact, since a long while past, that I placed the matter in Mr. C. Vernon Ford's hands when I left America, to the end that he would sooner or later and perhaps even through your wish be able to work on a divorce in my behalf on a basis of friendly agreement. Take my word for it, as I once before gave it, that I would separate from you if you committed the third time a certain act towards me, which needless to say was committed, that I will get a divorce from you when I return to America by suit, if it has not been obtained in the meantime by your agreeing to a friendly divorce. I hope you will not waste your time in speculating that I cannot do this, for as to that there is no question of doubt, but it is certainly my hope that this method will not have to be resorted to for the following reasons: * * * I will never again live with you."

In addition to the quoted matter, defendant made accusations of a most indecent and reprehensible character against his wife, and informed her that, in the event of a divorce contest, these charges would become public.

The next communication plaintiff received was dated November 15, 1918, in which Moncure informed her that he had written Mr. Ford to cable him—

"whether you have agreed to the divorce on a friendly basis," etc. "If this is not accomplished before my return, I am at least going to get it under way by that time."

The defendant, testifying in his own behalf, confined himself almost exclusively to a statement of his financial condition. He did not deny that he had deserted his wife, and expressed no regret for his conduct toward her, nor a willingness to effect a reconciliation. He testified that early in January of 1920, shortly after his return from France, he

telephoned his wife "asking her to meet him, so that they could talk over their affairs"; that she agreed to do so, but, instead, had service of the petition for divorce made upon him.

At the close of the evidence the learned trial justice expressed the view that, inasmuch as the desertion was alleged as of April, 1917, when the evidence showed cohabitation subsequent to that date, and the plaintiff must have known the averment in her petition was untrue, the petition must be dismissed. Thereupon plaintiff asked leave to amend, so as to make her petition conform to the proof; but this motion the court declined to grant.

[1, 2] A divorce proceeding in this jurisdiction is equitable in character (Code, §§ 85, 963), and under the provisions of section 966 a "legal separation from bed and board may be granted for drunkenness, cruelty, or desertion." It will be observed that no definite period of desertion is prescribed. Intent, therefore, plays an important part in determining the question. While actual separation and intention to desert must exist together to constitute desertion (19 C. J. 63; 9 R. C. L. 354), it is apparent that they need not be identical in their commencement. Hubbard v. Hubbard, 127 Md. 617, 96 Atl. 860; Carroll v. Carroll, 68 N. J. Eq. 724, 61 Atl. 383. Thus, if the departure antedates the intention to desert, the period of desertion dates from the time such intention was formed (Hitchcock v. Hitchcock, 15 App. D. C. 81; Taylor v. Taylor, 112 Md. 666, 77 Atl. 133), while if the intention to desert antedates the departure, the period commences to run from the time of the latter (Middleton v. Middleton, 187 Pa. 612, 41 Atl. 291).

[3] In this case it is clear that, long prior to his departure for France, the defendant had formed the purpose of deserting his wife. The letter he wrote her in October of 1918 is susceptible of no other interpretation. Moreover, that letter was conceived in such malice and ill will, and couched in such cruel, intemperate, and libelous terms, as to deprive the writer of any further consideration from either his wife or the court. And when we come to consider that defendant offered not a word of evidence to substantiate those charges, his conduct becomes all the more reprehensible. It was an obvious attempt to coerce his wife into a divorce arrangement satisfactory to him.

We are not at all convinced that Mrs. Moncure did not act in good faith in verifying her petition. She then was advised of the duplicity of her husband, and was quite justified in her conclusion that in fact, if not in law, the separation dated back to April of 1917. Indeed, the defendant, in the letter written early in October of 1918, had fixed that date, for he therein referred to "the year and a half that we have been separated," and then stated:

"I do not know what your wish is on the subject, but you certainly have realized from the first day of our separation that any future for us together was impossible. The fact that you came to Newport, R. I., and against my wishes, while I was stationed at Ft. Adams, and that we parted apparently friendly, does not and has not altered this in the least."

Knowing that her husband had consulted an attorney, and that their relations after April of 1917 were the result of his duplicity, it

is not at all strange that Mrs. Moncure should have adopted her husband's theory as to the date of his desertion of her. There could have been no ulterior motive in fixing the date as of April 1, 1917, instead of later, for, as we have seen, the statute prescribes no definite period of desertion. In view of the surrounding circumstances, we are quite convinced that plaintiff had in mind the time when her husband really had formed the definite purpose of deserting her, rather than the mere physical separation. Certainly we are not prepared to withhold relief to this wife upon the mere suspicion that she willfully overstated her case in her petition, when the conduct of her husband, as evidenced by his own letter, has been so reprehensible. It may be observed that the defendant repeatedly sought to induce his wife to enter into an arrangement whereby he might obtain a divorce. In other words, he attempted to persuade her to refrain from making any defense, and thus to impose upon and deceive the court.

[4] In his testimony the defendant evidently wished to create the impression that, because he telephoned his wife, "asking her to meet him so that they might talk over their affairs," he was willing to effect a reconciliation. In view of what had gone before, plaintiff was quite justified in assuming that this was but another attempt to arrange for a divorce on his terms. After writing his wife the letter of October, 1918, and ignoring her for such a long period, it was defendant's duty, when he returned from France, to express regret for his conduct and make a special effort toward reconciliation. Woolard v. Woolard, 18 App. D. C. 326; McVickar v. McVickar, 46 N. J. Eq. 490, 19 Atl. 249, 19 Am. St. Rep. 422.

We are of the view that, in the circumstances, the court should have permitted the amendment sought, and that plaintiff was entitled to a decree.

The decree appealed from, therefore, is reversed, with costs, and the cause remanded for further proceedings, not inconsistent with this opinion.