**EMRICH v. McNEIL.**

No. 7864.

United States Court of Appeals for the
District of Columbia.

Decided March 30, 1942.

842

EDGERTON, Associate Justice, dissenting.

Mr. J. Benjamin Simmons, of Washington, D. C., with whom Messrs. S. Joseph Corrigan and Scott D. Kellogg, both of Washington, D. C., were on the brief, for appellant.

Mr. Donald S. Caruthers, of Washington, D. C., with whom Messrs. Edison W. Mollohan, Jr., Charles M. Irelan, and Joseph D. Buscher, all of Washington, D. C., entered appearances, for appellee.

Before MILLER, EDGERTON and RUTLEDGE, Associate Justices.

MILLER, Associate Justice.

On November 3, 1936, Alton D. McNeil filed his suit in the District Court of the United States for the District of Columbia, asking for an absolute divorce from Margaret McNeil on the grounds of desertion. She answered, denying the allegation of desertion; asking for custody of the minor child; and asking, also, that the father be required to provide maintenance for the child. On February 15, 1937, the District Court granted an absolute divorce to Alton D. McNeil, but in its decree failed to speak with respect either of custody or of maintenance of the minor child. Eight days later, on February 23, 1937, a stipulation, signed by both parties and by their attorneys of record, was filed in the divorce action. This stipulation provided "that *pendente lite and permanently* the custody of the infant daughter of plaintiff and defendant, namely; Joan Teresa McNeil, now 6 years of age, shall remain with the defendant herein, Margaret T. McNeil, and that the plaintiff shall pay to the defendant, for the support and maintenance of said infant child, the sum of five ($5.00) dollars per week, which sum is hereby accepted by the defendant in full settlement and discharge of *the obligation of the plaintiff to support and maintain said child.*" [Italics supplied]

Alton D. McNeil paid the stipulated amount of $5 per week for the child's maintenance, thereafter, until June 22, 1940, and on numerous occasions contributed additional sums of money for the support and care of the child. On July 1, 1940, Margaret McNeil Emrich—she having remarried—filed a motion in the original equity case No. 62869, asking that the District Court grant an *increase* in maintenance for the minor child. On July 8, 1940, Alton D. McNeil answered the motion and in his own behalf asked custody of the child, alleging that the mother was not providing a suitable and adequate home for her. The motion was heard on the 25th and the 29th of July, 1940, and on August 12, 1940, a decree was signed giving custody of the child to Margaret McNeil Emrich, and requiring Alton D. McNeil to pay the sum of $5 per week for the maintenance of the child, the first payment to be made on August 3, 1940. In fact, Alton D. McNeil made the first payment under the decree on July 29, 1940. He failed, however, to make payments for the period from June 22 to July 29, 1940.

On February 1, 1941, Margaret McNeil Emrich filed her complaint in the Munici-

pal Court of the District of Columbia, asking judgment for $25, which amount she alleged to be due and owing by virtue of the stipulation theretofore filed in equity case No. 62869, in the District Court of the United States for the District of Columbia. Upon motion of Alton D. McNeil, and following argument, the Municipal Court dismissed the case for want of jurisdiction. We allowed an appeal to settle this important question of conflicting jurisdiction between the two courts.

The District Court acquired jurisdiction of the subject matter of the claim here involved upon the filing of suit, on November 3, 1936, in equity case No. 62869.[1] The bill of complaint in that case set forth that there was a minor child of the parties. The answer requested custody and provision for maintenance of the child. Although the decree of the court failed to speak with respect to custody or maintenance, it is apparent that this resulted from the fact that the stipulation entered into by the parties made provision for both. The stipulation bore no date upon its face but the fact that it spoke in terms of *pendente lite and permanently*, shows clearly enough that it was executed prior to the entry of judgment. It was filed—and carries the filing date stamped thereon by the court—on February 23, 1937, eight days after the entry of judgment. It carries the same number and title of cause as the suit itself, in which the decree of divorce had been entered. It is further titled "Stipulation for Maintenance and Support of Infant Child, etc." and was undoubtedly intended by the parties, their attorneys and the court to constitute a part of the record in that case.

On this appeal it has been presented to us as a part of the record of the present case and it is not disputed that it was intended to supplement the decree of the District Court.

It may be observed in passing that it would seem to be better practice—if the court approves such a stipulation—that it should be incorporated into the decree itself.[2] But, even though this was not done in the present case, no reason appears for denying, to the stipulation, equal effectiveness as if it had been done; at least so long as, and to the extent that, it received the tacit approval of the court and was carried out by the parties.[3] It was the duty of the court to act for the protection of the child and the situation is one, consequently, in which it is proper to assume that its official duty was performed.[4]

Having acquired jurisdiction, under the circumstances of the present case, the court's jurisdiction continued for all proper purposes concerning the custody and maintenance of the child.[5] This results, first, from the principle, long recognized in the District, that when chancery once acquires jurisdiction over a subject matter it will continue to exercise that jurisdiction so long and so often as occasion shall require for the purpose of making its decree effective and of granting full and final relief in the premises,[6] even though this may require the adjudication of purely legal rights which, otherwise, would not be within the range of its authority.[7] Accordingly, the District Court has power to grant full and complete relief in an equity case.[8] A divorce

[1] Elkins v. Elkins, 55 App.D.C. 9, 10, 299 F. 690, 693; Burrowes v. Burrowes, 64 App.D.C. 392, 394, 78 F.2d 742, 744.

[2] See Melson v. Melson, 151 Md. 196, 206, 134 A. 136, 140; Frazier v. Frazier, 109 Fla. 164, 170, 147 So. 464, 466.

[3] See Dunbar v. Dunbar, 190 U.S. 340, 351, 23 S.Ct. 757, 47 L.Ed. 1084; Edleson v. Edleson, 179 Ky. 300, 200 S.W. 625, 2 A.L.R. 689. Cf. Keyes v. Keyes, 51 Idaho 670, 9 P.2d 804; Douglas v. Willcuts, 296 U.S. 1, 6, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391 (alimony).

[4] See Lucking v. Delano, App.D.C., 122 F.2d 21, 29, and authorities there cited.

[5] D.C.Code (1940) § 16—413; Frazier v. Frazier, 61 App.D.C. 279, 281, 61 F. 2d 920, 922; Davis v. Davis, 61 App.D.C. 48, 50, 57 F.2d 414, 416; Elkins v. Elkins, 55 App.D.C. 9, 11, 299 F. 690, 693; Melson v. Melson, 151 Md. 196, 206, 134 A. 136, 139, 140.

[6] Elkins v. Elkins, 55 App.D.C. 9, 11, 299 F. 690, 693; Davis v. Davis, 61 App.D.C. 48, 50, 57 F.2d 414, 416; Frazier v. Frazier, 61 App.D.C. 279, 61 F.2d 920.

[7] Avery v. Vernon, 59 App.D.C. 284, 285, 40 F.2d 796, 797, certiorari denied, 282 U.S. 857, 51 S.Ct. 32, 75 L.Ed. 759; McGowan v. Parish, 237 U.S. 285, 296, 35 S.Ct. 543, 59 L.Ed. 955; Peck v. Jenness, 7 How. 612, 624, 12 L.Ed. 841.

[8] McGowan v. Parish, 237 U.S. 285, 296, 35 S.Ct. 543, 59 L.Ed. 955; Camp v. Boyd, 229 U.S. 530, 552, 33 S.Ct. 785, 57 L.Ed. 1317.

proceeding in the District of Columbia is equitable in character.[9]

But the important consideration which requires that the equity court—a court of competent jurisdiction—shall retain continuing and exclusive jurisdiction in the present case is one of public policy, i. e., the welfare of the minor child.[10] Under such circumstances it is generally recognized that, independent of statute, a court of chancery has jurisdiction over the custody and maintenance of such a child.[11] A father who is a party to such a proceeding cannot, by contract or otherwise, avoid, or relieve himself from, his primary obligation to maintain a minor child.[12] The child's claim against its father for maintenance is not subsidiary to that of the mother.[13] After submitting themselves to the jurisdiction of the court, the parents cannot by their agreement deprive it of power to control the custody and maintenance of the child.[14] Such a child is in a very real sense the ward of the court.[15] It has power to change the custody of the child; to enforce the parental obligation to provide maintenance;[16] and, if necessary, to remove the child from the custody of both parents.[17]

For these reasons no reservation in the original decree is necessary for the exercise of continuing authority.[18]

In proceedings for divorce, the jurisdiction of the court is in some respects *necessarily* continuous. With respect to the custody and maintenance of minor children of the unhappy marriage, the court must necessarily retain a continuing jurisdiction.[19] That the parties recognized these facts is shown by their filing of the stipulation in the equity case. It is shown, also, by their compliance, for several years, with the terms of the stipulation and by their reappearance before the District Court in July, 1940. They were no longer able, therefore, even as parents, to contract freely concerning the disposition and maintenance of the child.[20] The entire circumstances of the case indicate that the stipulation was not intended to serve such a purpose.

So long as they—and especially the child—remain subject to the jurisdiction of the District Court, public policy requires that it, not the Municipal Court, shall determine all questions of custody and maintenance. This is true even as between courts of concurrent jurisdiction —the one which first acquires jurisdiction retains it;[21] and it is true as between courts of different states,[22] unless the welfare of the child requires that the court of the state to which it has been physically removed should assume control.[23]

---

[9] Moncure v. Moncure, 51 App.D.C. 292, 295, 278 F. 1005, 1008.

[10] Slack v. Perrine, 9 App.D.C. 128, 160, writ of error dismissed, 164 U.S. 452, 17 S.Ct. 79, 41 L.Ed. 510; Church v. Church, 50 App.D.C. 237, 270 F. 359; Heavrin v. Spicer, 49 App.D.C. 337, 339, 265 F. 977, 980. Cf. Hellmuth v. Hellmuth, 69 App.D.C. 64, 98 F.2d 431, certiorari denied, 305 U.S. 597, 59 S.Ct. 92, 83 L.Ed. 378; Kraskin v. Kraskin, 70 App.D.C. 85, 104 F.2d 218, certiorari denied, 308 U.S. 568, 60 S.Ct. 81, 84 L.Ed. 477.

[11] Wedderburn v. Wedderburn, 46 App. D.C. 149, 154.

[12] See Dunbar v. Dunbar, 190 U.S. 340, 351, 352, 23 S.Ct. 757, 47 L.Ed. 1084; Melson v. Melson, 151 Md. 196, 206, 134 A. 136, 140.

[13] Howard v. Howard, 72 App.D.C. 145, 146, 112 F.2d 44, 45.

[14] See Aldrich v. Aldrich, 166 Mich. 248, 131 N.W. 542; Keyes v. Keyes, 51 Idaho 670, 9 P.2d 804; Anderson v. Anderson, 56 Cal.App. 87, 204 P. 426.

[15] Church v. Church, 50 App.D.C. 237, 238, 239, 270 F. 359, 360, 361. See Rosenberger v. Rosenberger, 68 App.D.

C. 220, 221, 222, 95 F.2d 349, 350, 351; Salkey v. Salkey, Mo.App., 80 S.W.2d 735, 739, 740.

[16] Elkins v. Elkins, 55 App.D.C. 9, 11, 299 F. 690, 693.

[17] D.C.Code (1940) §§ 21—101, 21—108; Church v. Church, 50 App.D.C. 237, 270 F. 359; Slack v. Perrine, 9 App.D.C. 128, 160, writ of error dismissed, 164 U.S. 452, 17 S.Ct. 79, 41 L.Ed. 510; Tomlinson v. French Institute, 232 Mo.App. 597, 600, 601, 109 S. W.2d 73, 76.

[18] Elkins v. Elkins, 55 App.D.C. 9, 11, 299 F. 690, 693.

[19] Alexander v. Alexander, 13 App.D.C. 334, 351, 45 L.R.A. 806; Elkins v. Elkins, 55 App.D.C. 9, 11, 299 F. 690, 693.

[20] See note 14 supra.

[21] Smith v. McIver, 9 Wheat. 532, 6 L.Ed. 152, and see note 6 supra.

[22] Rosenberger v. Rosenberger, 68 App. D.C. 220, 95 F.2d 349.

[23] Heavrin v. Spicer, 49 App.D.C. 337, 265 F. 977; Slack v. Perrine, 9 App. D.C. 128, 160, writ of error dismissed, 164 U.S. 452, 17 S.Ct. 79, 41 L.Ed. 510. See Burrowes v. Burrowes, 64 App.D.C. 392, 78 F.2d 742.

Obviously, it is even more true as between an equity court of full jurisdiction and an inferior court of limited jurisdiction at law.[24] No advantage to the parties, to the minor child, or to the well being of the people of the District could be accomplished by permitting such a splitting up of issues as was attempted by filing the complaint in the present case in the Municipal Court. Every consideration, on the other hand, requires that the District Court retain control and administer justice in this case fully and completely. It is apparent that the relief afforded by equity will be much more comprehensive, satisfactory and just than would be possible in a court of law. If the time ever comes when Congress, in its wisdom, shall transfer full jurisdiction in equity over such cases to the municipal court then, of course, the reason for this decision will fail. But that is not the present situation.

Appellant relies upon the case of Demonet v. Burkart,[25] but it provides no support for her contention. That decision purported to state an exception to the general rule.[26] The court recognized the doctrine, which prevails generally, as well as in the District of Columbia, that jurisdiction over the custody and support of minor children in divorce cases is a continuing one.[27] It then went on to say that in the circumstances of that case there was no reason for requiring the father to reimburse the mother for expenses which she had voluntarily incurred and paid prior to the filing of her petition, and after she had brusquely rejected his offers to assist in providing for the maintenance of the child.

It is not necessary, for the purposes of the present case, that we should approve or disapprove the language of the Demonet case, much of which runs counter to later decisions; or to consider whether the exception to the general rule, which was there stated, was justified, even under the aggravated circumstances of that case; because the present case is clearly distinguishable. It is apparent that the Demonet case was tried by the court and counsel upon issues which were framed concerning the conflicting interests of divorced persons and in reliance upon cases which were primarily concerned with similar issues; overlooking the consideration which is dominant and controlling in the present case—the welfare of an innocent minor child.[28] As was pointed out by this court in Wedderburn v. Wedderburn,[29] the wife, in the Demonet case, sought to have the court reopen the case and reimburse her "as alimony," for the money which she had expended for the support of the child.

In the present case, moreover, in contrast to the Demonet case, the custody and maintenance of the child was not voluntarily and exclusively assumed by the mother. Instead, by the stipulation, which was made a part of the record, custody was given to her, and the father expressly recognized and assumed his obligation to provide maintenance.[30] Moreover, his recognition of this obligation was evidenced for several years by his willing payment of the amount specified in the stipulation, together with frequent additional amounts. He did not discontinue these payments until the time came when his wife requested an order of the District Court to increase the amount which he should be required to pay. He reassumed his obligation, without protest, in advance of the date fixed by the District Court, after the entry of the order of August 12, 1940. There is nothing to indicate that he would not now willingly comply with a proper order of that court, concerning the amount here involved.

▇ It is said that, in the nature of things, it is impossible to provide past support, and therefore the court has no power to make provision other than for the future. It is true that the child has been supported during the period in dispute and no order now made can affect what the child had to eat, wear and otherwise consume during that time. But the argument assumes that it is the actual day to day support only and not the primary duty to render it which is the subject of the court's jurisdiction. In truth, both

---

[24] Wedderburn v. Wedderburn, 46 App. D.C. 149, 154; Melson v. Melson, 151 Md. 196, 206, 134 A. 136, 140.

[25] 23 App.D.C. 308, 315, 316.

[26] Cf. cases cited in note 12 supra.

[27] Elkins v. Elkins, 55 App.D.C. 9, 11, 299 F. 690, 693.

[28] Cf. Heavrin v. Spicer, 49 App.D.C. 337, 339, 265 F. 977, 979.

[29] 46 App.D.C. 149, 153.

[30] Dunbar v. Dunbar, 190 U.S. 340, 351, 23 S.Ct. 757, 47 L.Ed. 1084; Wedderburn v. Wedderburn, 46 App.D.C. 149, 153.

the support and the duty to render it are within its power, and as we have said no contract can oust it of this authority. That the mother has supported the child and the child has had support does not affect the duty of the father to render it, relieve him of the burden, or deprive the court of power to compel him to discharge it, as he should have done, or to force him to reimburse the mother for what she has expended on that account.

It was apparently through oversight upon the part of the District Court that the order of August 12, 1940 required the first payment to be made as of August 3d instead of June 22d. No doubt, if its attention had been called to the lapse in payments which took place from June 22, 1940 to July 29, 1940, an appropriate order would have been made to take care of this discrepancy. It does not appear, however, that such a request was ever made or that the discrepancy was ever called to the attention of the District Court. It had power to grant full and complete relief. Appellant could and should have sought relief therein, and she can now, and should seek relief therein, instead of attempting to recover in an action at law in the Municipal Court.[31]

Affirmed.

EDGERTON, Associate Justice (dissenting).

This is not a suit to compel support of a child. It is not even a suit to recover money expended for a child's support. It is a suit by a mother to recover, for her own use, money which the father had agreed to pay her periodically "for the support" of the child. Though the parties called their agreement a stipulation, and filed it among the papers in a divorce suit, the divorce court did not act upon it. It was not a court order. When the present suit was brought, the purpose which the claimed payments had originally been intended to serve could no longer be accomplished, since the periods during which they were intended to provide support had already elapsed. The agreement in suit was enforceable by appellant, if at all, as a contract for payment of money. The Small Claims Branch of the Municipal Court has exclusive jurisdiction of claims of this amount.[1]

The District Court had continuing and exclusive jurisdiction to provide support for the child.[2] Accordingly it could at any time, prospectively, abrogate the agreement of the parties on the subject. But support of a child is a form of alimony,[3] and the District Court has no retrospective jurisdiction over alimony.[4] Since it is impossible, in the nature of things, to provide past support, jurisdiction to provide support necessarily relates to the future.[5] Appellant filed her motion in the District Court on July 1, 1940. Since its jurisdiction was purely prospective, her motion and its order could not destroy or affect her matured claim for the period before July 1.[6]

With respect to the period after July 1, the order could abrogate the agreement. How far it did so turns wholly on the intention of the District Court as conveyed in the order. It made no express reference to the agreement. Since it did not abrogate the agreement expressly, the question is whether it did so, to any extent which is here pertinent, by implication. The order was entered "upon consideration of the motion of [appellant] to require [appellee] to pay an *increased* amount for maintenance of the infant child. * * *"[7] The record discloses no proposal from any quarter to *reduce* maintenance, and no suggestion that five dollars a week was excessive, either permanently or temporarily. The order fixed the same weekly amount as the agreement. It provided for support after August 3, and said nothing about the intervening period. Nothing suggests that the District Court intended to cause a lapse in support, by making it cease to accrue under the agreement before it began to accrue under the order. Every suggestion

[31] Biscayne Trust Co. v. American Security & Trust Co., 57 App.D.C. 251, 252, 20 F.2d 267, 268. Cf. Rowell v. Rowell, 97 Kan. 16, 20, 154 P. 243, 245, Ann. Cas.1918C, 936.

[1] D.C.Code (1940) § 11—804.
[2] D.C.Code (1940) § 16—413.
[3] D.C.Code (1940) § 16—411.
[4] Caffrey v. Caffrey, 55 App.D.C. 285, 4 F.2d 952.

[5] Demonet v. Burkart, 23 App.D.C. 308.
[6] Woods v. Bard, 285 N.Y. 11, 32 N.E. 2d 772, 774; O'Brien v. O'Brien, 252 App.Div. 427, 299 N.Y.S. 511; Breiterman v. Breiterman, 239 App.Div. 709, 268 N.Y.S. 628, 631.
[7] And upon consideration of the motion for custody. Italics supplied.

is to the contrary. It would take strong evidence to justify imputing to the court an intent to free appellee, for a period of five weeks, from both his statutory and his contract obligation to support his child. So far as appears, the court was not even requested to do such a thing. Since no such intent can be imputed to it, its order had no effect upon the claim now in suit, which is for instalments which accrued before July 29 under the agreement. That claim remained in force, and remained within the jurisdiction of the Municipal Court. That court's order of dismissal was therefore erroneous.